OPINION
{¶ 1} Defendant-appellant, Joseph Pesec ("Pesec"), appeals the judgment of the Portage County Court of Common Pleas finding him guilty of two counts of complicity to grand theft, felonies of the fourth degree in violation of R.C. 2923.03 and 2913.02(A)(3)(B), and one count of receiving stolen property, a felony of the fifth degree, in violation of R.C. 2913.51. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} Facts Underlying Theft Offenses
 {¶ 3} The charges against Pesec stem from a complaint made by Larry Lomaz ("Lomaz") in May 2003 with the Portage County Sheriffs Department in which he alleged that Pesec had removed, without his consent, a bulldozer, a front end loader, and a turf gator from property located at 8550 State Route 224 in Deerfield.
 {¶ 4} Two of Lomaz's former employees personally observed Pesec and Albert Gibel ("Gibel") remove the machinery from the premises in December 2002 and in January 2003, along with computer equipment and files. Gibel was seen with a gun in his possession during the removal of the property. Two women videotaped the removal of the personal property by Pesec and Gibel.
 {¶ 5} After discovering that the personal property had been moved to Pesec's property, Lomaz went there and matched the serial number of the turf gator with his records. Lomaz asked Pesec to return the pieces of equipment to him and presented Pesec with his proof of purchase to show that he owned the equipment, but Pesec refused to return the items. According to Lomaz, Pesec said that he had purchased the equipment along with the eighty-eight acres of real property from Gibel for $10,000.
 {¶ 6} Detective Jack Herman of the Portage County Sheriffs Department interviewed Pesec on September 18, 2003. During the interview, Pesec admitted taking this property, but again stated that he did so after he purchased the real property from Albert Gibel. *Page 3 
 {¶ 7} Gibel's Relationship with the Parties and Alleged Transfer ofReal Property
 {¶ 8} Albert Gibel was one of Lomaz's former employees who had previously been convicted of committing theft offenses (embezzlement) from the company Lomaz owned called Midwest Fireworks Manufacturing Company ("Midwest").
 {¶ 9} In the years preceding the underlying criminal appeal, Lomaz filed a civil lawsuit against Pesec in Portage County. Midwest also filed a civil lawsuit against Gibel in Cuyahoga County.[1] As part of that lawsuit against Gibel, the court ordered Midwest to transfer his equitable interest in the Deerfield real estate to the Cuyahoga County Clerk of Courts on November 12, 1999, and to "hold said deed as if it were a redelivery bond pending resolution of the trial court's determination."
 {¶ 10} Gibel filed a separate proceeding against the Cuyahoga County Clerk of Courts. On December 18, 2002, the court entered a "nunc pro tunc" ordering the clerk of courts to quit-claim the deed to the Deerfield real estate being held as a bond in the Midwest v. Gibel case to Gibel.[2] In a letter dated April 22, 2005, the court explained to counsel that when it issued that order, it only intended to relieve the clerk of any interest in the property. It stated that the "administrative" order "determined no issue of ownership * * *. [with respect to the real property.]" The ownership of the Deerfield real property remained at issue, however, since Lomaz claimed his company, Pacific Financial Services ("Pacific") held the equitable interest. Gibel subsequently quitclaimed the property to Pesec. *Page 4 Bankruptcy Proceedings Filed by Lomaz
 {¶ 11} In June 2003, Lomaz filed a bankruptcy petition in Ohio for Midwest and Pacific. Lomaz did not list any claim Midwest had against Pesec in the petition. Nor did Lomaz list any of the pieces of equipment Pesec removed from the property under items of personal property.
 {¶ 12} Beginning in May 2003, Pesec, through his attorney, Craig Conley ("Conley"), advised the bankruptcy receiver that he had these pieces of equipment in his possession and that he believed he had ownership rights to the equipment. Attorney Conley admittedly stated that they were unaware of which person may have owned the heavy equipment but that under the theory of hereditaments, they believed Pesec owned the equipment once he had title to the real property.
 {¶ 13} Nevertheless, to obtain "clear" title, Pesec offered to pay the bankruptcy trustee $10,000 and later $12,000 for the real property and pieces of equipment. In his September 23, 2003 letter, Conley wrote the trustee stating that given Lomaz's representations regarding his ownership interest in the personal property that Pesec "understands * * * there could be a future dispute as to ownership * * * ." The trustee refused to "sell" these items to Pesec.
 {¶ 14} Criminal Trial Against Pesec
 {¶ 15} An indictment in the instant case was handed down against Pesec on July 28, 2004. With respect to the complicity to grand theft charges, Pesec was indicted for aiding and abetting Albert Gibel in removing the bulldozer and front loader without consent or by deception. The receiving stolen property charge involved the removal of the turf gator. A bench trial commenced on May 3, 2006. The trial court found Pesec *Page 5 
guilty as charged. Pesec was sentenced on August 7, 2006, to a term of eighteen months for each count of complicity to grand theft, to run concurrently to one another, and to a term of nine months for receiving stolen property, to run consecutively.
 {¶ 16} Pesec timely appealed, raising five assignments of errors for our review:
 {¶ 17} "[1.] The trial court committed plain error in allowing the prosecuting attorney, through witness, Larry Lomaz to introduce false, misleading and prejudicial evidence as to the ownership of the Deerfield real-estate, and the nature of the transfer of that real-estate from the Cuyahoga County Court of Common Pleas to Albert Gibel, also introducing prejudicial hearsay evidence thereby depriving appellant of his right to a fair trial and confrontation as guaranteed by the Sixth andFourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.
 {¶ 18} "[2.] The trial court erred and thereby deprived appellant of due process of law and confrontation as guaranteed by the Sixth andFourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution by allowing hearsay evidence and/or lay-opinions to establish value of the property taken.
 {¶ 19} "[3.] The trial court erred and thereby deprived appellant of due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and comparable provisions of the Ohio Constitution by overruling appellant's Crim.R. 29 motion for judgment of acquittal, as the prosecution failed to prove all the element [sic] of the charge of receiving stolen property and complicity to grand theft.
 {¶ 20} "[4.] The trial court erred and thereby deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by finding appellant guilty, as the verdict *Page 6 
for the charges of receiving stolen property and complicity to grand theft were against the manifest weight of the evidence.
 {¶ 21} "[5.] The trial court was improperly influenced, had inappropriate ex-parte communication or was otherwise biased to appellant's detriment such as to deprive appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution."
 {¶ 22} Improper Hearsay Testimony and Violation of ConfrontationClause
 {¶ 23} In his first and second assignments of error, Pesec challenges the trial court's allowance of testimony regarding the transfer of the real estate as well as the ownership and valuation of the personal property at issue in the case. Pesec characterizes the evidence as either improper or as hearsay and claims that with respect to the valuation issue, he was denied his right to confrontation.
 {¶ 24} The trial court has "broad discretion in the admission and exclusion of evidence." State v. Bentley, 11th Dist. No. 2004-P-0053,2005-Ohio-4648, at ¶ 19, citing State v. Hymore (1967),9 Ohio St.2d 122, 128. Thus, we "shall not disturb evidentiary rulings absent an abuse of discretion." Id. "An abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Id., citing State v.Adams (1980), 62 Ohio St.2d 151, 157. Moreover, in a bench trial, "there is a presumption that the trial judge `considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" Jackson v. Herron, 11th Dist. No. 2003-L-145, 2005-Ohio-4046, at ¶ 28, citing State v. White (1968),15 Ohio St.2d 146, 151. *Page 7 
 {¶ 25} With this standard of review in mind, we turn to the testimony and evidence to which Pesec objects. First, Pesec objects to the state's characterization of the real estate as belonging to Lomaz when, in questioning Lomaz, the assistant prosecutor referred to the real property as "your property." Pesec also objects to Lomaz's testimony describing the transfer of the real estate from the Cuyahoga Clerk of Courts to Albert Gibel as a "fraudulent transfer" and to Lomaz's testimony that the Cuyahoga County Court of Common Pleas, in his civil lawsuit against Gibel, found that Gibel had fraudulently conveyed the real estate.
 {¶ 26} This argument lacks merit. To begin with, there was conflicting evidence presented as to who owns the real estate. Although Pesec claims that he had legal title to the property, Lomaz testified that the real estate was titled to Pacific, of which he was the primary shareholder. Thus, the ownership of the real property was in dispute. Moreover, regardless of who owns the real property, the ultimate issue in the case is whether Pesec inappropriately took the personal property from the owner (Lomaz) without permission. Thus, this line of questioning, even if erroneous, cannot be considered prejudicial. As the state argued in its motion in limine, the ownership of the real property is being used as a red herring by the defense since it has no probative value concerning the personal property taken.[3]
 {¶ 27} Furthermore, because this was a bench trial, it is presumed that the court will only consider admissible evidence. As we have previously noted: "The trial court, sitting as judge and jury, is afforded greater latitude in permitting incompetent or *Page 8 
inadmissible evidence." State v. Rock (Dec. 20, 1991), 11th Dist. No. 91-A-1582, 1991 Ohio App. LEXIS 6247, at 13.
 {¶ 28} With respect to Lomaz's testimony that the real estate transfer was fraudulent, the trial court was able to review State's Exhibit 12, which included documents relating to his civil lawsuit against Gibel in Cuyahoga County to decipher whether the conveyance was in fact fraudulent. In addition, although Lomaz had testified on direct examination that these documents demonstrated that the Cuyahoga County Court of Common Pleas found that the transfer of the real estate was fraudulent, on cross-examination defense counsel elicited from Lomaz that no such finding was made. In fact, Lomaz conceded that the court granted judgment in his favor because it found that Gibel had engaged in discovery violations. Thus, although the end result was that judgment was entered in favor of Lomaz, the court did not per se make a finding that there was a fraudulent conveyance. Because defense counsel was able to effectively cross-examine Lomaz, we find that even if Lomaz mischaracterized the conveyance as fraudulent, any error would be harmless.
 {¶ 29} Pesec also objects to the introduction of the actual civil court documents, contending that these documents should have been excluded as hearsay. We reject this argument. These documents are public records and therefore fall within the hearsay exception of Evid.R. 803(8). Moreover, only "testimonial statements" are subject to scrutiny under the Confrontation Clause. Thus, public records are akin to business records, which the Supreme Court has deemed "by their nature * * * not testimonial" and are not subject to the requirements of the Confrontation Clause. Crawford v. Washington (2004), 541 U.S. 36, 56;State v. Wills, 10th Dist. No. 05AP-509, *Page 9 2006-Ohio-2295, at ¶ 13; Davis v. Washington (2006),126 S.Ct. 2266, paragraph one of the syllabus. Thus, Pesec can hardly claim he was denied his right to confrontation.
 {¶ 30} Pesec also challenges the admissibility of Lomaz's opinion regarding the valuation of the personal property taken. Pesec contends that Lomaz's opinion was based solely on what others had told him. Since he was unable to confront and cross-examine the declarants who provided Lomaz with their valuations, Pesec argues the trial court violated hisSixth Amendment right to confrontation.
 {¶ 31} The Sixth Amendment of the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to * * * be confronted with the witnesses against him * * *. Article I, Section 10
of the Ohio Constitution provides, in relevant part: In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel * * * [and] meet the witnesses face to face * * *." State v. Minier (Sept. 28, 2001), 11th Dist. No. 2000-P-0025, 2001 Ohio App. LEXIS 4411, at 4, citing Delaware v. Van Arsdall (1986),475 U.S. 673, 679.
 {¶ 32} However, "[a] criminal defendant's right to confront and cross-examine a witness is not unlimited." Id. "A trial court retains `wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. Thus, the Confrontation Clause guarantees anopportunity for effective cross-examination, not cross-examination that is effective in whatever way, *Page 10 
and to whatever extent the defense might wish.'" Id. at 5, quotingDelaware v. Fensterer (1985), 474 U.S. 15, 20.
 {¶ 33} In this case, when Lomaz was asked to estimate the value of the personal property, he replied:
 {¶ 34} "A. I was told by the person that worked on the equipment that I made —
 {¶ 35} "Mr. Jakmides: I object to what he was told.
 {¶ 36} "The Court: I'll sustain.
 {¶ 37} "Q. I want your opinion on what they were worth, Larry.
 {¶ 38} " * * *
 {¶ 39} "I gave the value of the D-8 dozer anywhere from seventy-five to $100,000. I put significant improvements into the bulldozer. The International Crawler, I would estimate between twenty-five and $39,000, based upon the prices I saw on the market."
 {¶ 40} Although Lomaz initially began to testify as to what he was told by an unavailable declarant, the answer he ultimately gave was his own opinion based upon market prices he discovered by himself. An owner of personal property is qualified to give an opinion as to the value of personal property. State v. Clements (Jan. 30, 1978), 8th Dist. No. 36914, 1978 Ohio App. LEXIS, at 5, citing Bishop v. East Ohio Gas
(1944), 143 Ohio St. 541. Moreover, circumstantial evidence, including photographs of personal property, may be used to prove the value of stolen items in a theft offense. See State v. Reid, 2d Dist. No. 2006 CA 53, 2007-Ohio-2139, at ¶ 14. Thus, we find there was no infringement on Pesec's right to confront witnesses. Nor did the court admit into evidence impermissible hearsay. *Page 11 
 {¶ 41} Appellant's first and second assignments of error lack merit.
 {¶ 42} Sufficiency of the Evidence
 {¶ 43} In his third assignment of error, Pesec argues that there was insufficient evidence presented to sustain a conviction for receiving stolen property and complicity to grand theft. He contends that the state failed to prove that the personal property removed was stolen and failed to offer sufficient evidence regarding the value of these items.
 {¶ 44} We note that defense counsel failed to renew its motion for acquittal at the close of Pesec's case. Consequently, the state argues that Pesec waived his right to argue this issue on appeal. However, since Pesec also argued that his conviction was against the manifest weight of the evidence, we may decide this issue on its merits. City ofChardon v. Patterson, 11th Dist. No. 2006-G-2726, 2007-Ohio-1769, at ¶ 14; State v. Heiney, 11th Dist. No. 2006-P-0073, 2007-Ohio-1199, at ¶ 11. This is because a determination of whether a conviction is or is not supported by the weight of the evidence "necessarily rests on the existence of sufficient evidence." State v. McCrory, 11th Dist. No. 2006-P-0017, 2006-Ohio-6348, at ¶ 40.
 {¶ 45} As this court stated in State v. Schlee (1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13, the standard of review for a sufficiency of the evidence claim is "whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. * * *" *Page 12 
(Citations omitted.) "In essence, sufficiency is a test of adequacy[;] [w]hether the evidence is legally sufficient to sustain a verdict * * *."State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Thus, sufficiency of the evidence tests the burden of production. Id. at 390.
 {¶ 46} With respect to the charge of receiving stolen property, Pesec challenges the sufficiency of the state's evidence regarding the ownership and valuation of the personal property. Pesec contends that the state failed to prove that the personal property taken was stolen and that these items belonged to Lomaz. Pesec also asserts that the state failed to prove that he had the requisite knowledge that the personal property was stolen. He also maintains that insufficient evidence was presented regarding the valuation of the items taken.
 {¶ 47} R.C. 2913.51 sets forth the elements of receiving stolen property as follows:
 {¶ 48} "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." Receiving stolen property is a felony of the fifth degree if the value of the property is $500 or more but less than $5,000. (R.C. 2913.51(C)).
 {¶ 49} R.C. 2901.22(B) defines the requisite culpable mental state for receiving stolen property of "knowingly" as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably cause a certain result or will be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." *Page 13 
 {¶ 50} In addition to proving that appellant acted knowingly, the state was also required to prove that appellant had "reasonable cause" to believe the items were stolen. "Reasonable cause entails determining whether a person of ordinary prudence and care would believe that the property had been obtained through the commission of a theft offense."State v. Overholt, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, at ¶ 22, citing State v. Petty (May 21, 1987), 8th Dist. No. 52069, 1987 Ohio App. LEXIS 7082.
 {¶ 51} The state may use circumstantial evidence in order to prove that appellant had the requisite knowledge or that he had reasonable cause to believe the items were stolen. In re: Lame (Sept. 25, 1998), 11th Dist. Nos. 96-P-0265, 96-P-0266, and 96-P-0267, 1998 Ohio App. LEXIS 4532, at 9. In fact, "circumstantial evidence can be used to support a conviction `even if that evidence is reconcilable with a reasonable theory of innocence.'" Id., citing State v. Singletary (Aug. 6, 1994), 11th Dist. No. 93-A-1786, 1994 Ohio App. LEXIS 3745, at 6. Circumstantial evidence is therefore "equally probative, especially as to a mental state in which the sole direct evidence is known to the accused. * * * Moreover, because a defendant's mental state is difficult to demonstrate with direct proof, it may be `inferred from the circumstances.'" State v. Worthy, 11th Dist. No. 2004-L-137,2005-Ohio-5871, at ¶ 24, citing State v. Logan (1979),60 Ohio St. 2d 126, 131.
 {¶ 52} In this case, there was sufficient evidence presented upon which the trier of fact could reasonably conclude that appellant had the requisite knowledge and had reasonable cause to believe the pieces of equipment were stolen. To begin with, it can be inferred from the circumstances underlying the acquisition of the items taken that the items were retrieved without Lomaz's permission. Moreover, an ordinary person under *Page 14 
like circumstances would have reason to believe the pieces of equipment were in fact stolen.
 {¶ 53} The evidence established that the underlying circumstances surrounding the transaction, including the fact that such a low price was paid for the equipment and land, made the acquisition completely suspect. During the civil proceedings, when deposed, Pesec admitted that he paid Gibel in cash or in checks made out to "cash."[4] He also testified at the deposition that he paid Gibel $10,000 for the eighty-eight acres of real estate and personal property; that he had no contract or sales receipt for these transactions; and that he later learned that Gibel had embezzled from Lomaz. Although Pesec's attorney contacted the bankruptcy trustee when ownership was disputed, the evidence also shows that Pesec offered the trustee between $10,000 — $12,000 for the real estate and personal property. In essence, Pesec sought to "repurchase" what he claimed he already owned. Under these circumstances, it can be inferred that Pesec had knowledge that he was not the legal owner of the personal property and took these items from Lomaz without his permission. Moreover, under the circumstances presented, the evidence established that a person of ordinary prudence and care would have believed the items taken belonged to Lomaz.
 {¶ 54} Furthermore, although Pesec claims there was no evidence presented to show that the items removed were stolen, Lomaz specifically testified that he was the owner of the personal property and that he did not give Pesec permission to remove these items from the property. In addition to this testimony, Lomaz's employees personally observed Pesec and Gibel removing the personal property, and observed *Page 15 
Gibel armed with a weapon. Pesec admitted to Detective Herman when he was interviewed that he removed the property and towed and stored it at his expense.
 {¶ 55} The fact that Lomaz did not identify each piece of equipment by its VIN number is immaterial. These pieces of equipment were not motor vehicles subject to the registration or certificate of title law and did not need to be identified by these numbers, as appellant suggests. To the contrary, we find that it was sufficient that Lomaz, as the owner of the equipment, identified the stolen property as his. See e.g.,Overholt at ¶ 25-26, where owner of stolen ATV identified parts taken from the ATV as his own.
 {¶ 56} Thus, there was sufficient evidence presented to establish that the personal property was stolen.
 {¶ 57} Finally, with respect to the value of the property taken, Pesec challenges Lomaz's testimony regarding valuation and states that there was no evidence regarding the value of the turf gator. The complicity to grand theft counts stems from the theft of the bulldozer and front end loader, found to be a felony of the fourth degree, with a value of more than $5,000 but less than $100,000. See, R.C. 2923.03; R.C.2913.02(A)(3)(B). The receiving stolen property charge involves the theft of the turf gator, found to be a felony of the fifth degree with a value between $500 and $5,000, in violation of R.C. 2913.51.
 {¶ 58} Lomaz testified that in his opinion the value of the bulldozer was between $75,000 — $100,000 and the value of the front end loader was between $25,000-$30,000. Although Pesec challenges this testimony as being inadmissible hearsay, we have found in the previous assignments of error that it was admissible. Notwithstanding *Page 16 
this evidence, there was additional evidence in the record from the civil litigation to show that these items were at least worth $5,000. In fact, in his deposition, which was attached as an exhibit in this case, Pesec opined that the value of these items was no more than $10,000 together.
 {¶ 59} To establish value in theft offenses, the state need not prove value to an exact amount. Rather, all that is required is that some evidence be admitted to establish value. In re: Lame, at 14; R.C.2913.61(C). We find that there was sufficient evidence presented regarding the value of the items underlying the complicity to grand theft charges.
 {¶ 60} Regarding the value of the turf gator, we disagree with Pesec that there was no proof introduced regarding its value. R.C.2913.61(D)(2) provides in relevant part: "The value of * * * equipment * * * used in the * * * business * * * of its owner * * * which retains substantial utility for its purpose regardless of its age or condition, is the costs of replacing the property with new property of like kind and quality." Lomaz testified that the turf gator was used in the business. Thus, the proper method of valuation for equipment is the replacement cost. The trial court could have reasonably concluded that the turf gator was used in the business and fell within the type of equipment designated in R.C. 2913.61(D)(2). See Overholt, at ¶ 40-41.
 {¶ 61} Thus, to sustain a felony of the fifth degree conviction for receiving stolen property, the state had to prove that the replacement value of the turf gator was $500 or more but less than $5,000. SeeState v. Allen, 5th Dist. No. 2002CA00059, 2003-Ohio-229, at ¶ 12, where trial court upheld conviction for receiving stolen property of a snow *Page 17 
blower and edger by looking at the replacement value of these pieces of equipment. Overholt, supra.
 {¶ 62} In this case, Lomaz testified that he had purchased the turf gator in May 2003 at a cost of approximately $5,000. Based upon this recent purchase, we find that this was sufficient proof that the replacement value of a turf gator was at least $500 or more but less than $5,000, thereby satisfying the fifth degree felony conviction for receiving stolen property. Moreover, a photograph of the turf gator was introduced into evidence, and from the photograph its value could easily be found to be within the statutory range for a felony of the fifth degree. See Reid, at ¶ 14.
 {¶ 63} Thus, we find there was sufficient evidence presented to sustain a conviction for receiving stolen property.
 {¶ 64} With respect to the complicity to grand theft charges, R.C.2913.02 provides in relevant part that:
 {¶ 65} "(A) No person, with purpose to deprive the owner of property * * * shall knowingly obtain or exert control over either the property or services in any of the following ways * * * (3) By deception."
 {¶ 66} R.C. 2923.03, the complicity statute, states:
 {¶ 67} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall * * * (2) Aid or abet another in committing the offense."
 {¶ 68} In order to prove complicity to grand theft, these statutes when read together require the state to produce evidence to show that the defendant has knowingly aided and abetted another in committing the theft. State v. Hill, 11th Dist. No. 2005-A-0010, 2006-Ohio-1166, at ¶ 26. As previously stated, the culpable mental state *Page 18 
of "knowingly" is defined in R.C. 2901.22(B). The terms "aid and abet" have been construed to mean "to assist or facilitate the commission of a crime, or to promote its accomplishment." Id. at ¶ 25, citing, State v.Johnson (2001), 93 Ohio St.3d 240, 243. The offender must have taken some "`affirmative action to assist, encourage, or participate in the crime by some act, deed, word or gesture.'" Id., quoting State v.Sims, 11th Dist. No. 2001-L-081. 2003-Ohio-234, at ¶ 44.
 {¶ 69} In reviewing the record, we find that there was sufficient evidence, when viewed in a light most favorable to the state, to establish each element of the crime of complicity to grand theft. Since we have already found that the items taken were stolen, the state has proven the underlying theft. In addition, the uncontroverted evidence revealed that Pesec assisted Gibel in removing the equipment from the property. Pesec was not a mere bystander; rather, he was an active participant. In fact, Lomaz's employees testified that they saw Pesec helping Gibel remove the equipment and the videotape they recorded, which was admitted into evidence, proves that this was the case.
 {¶ 70} Thus, we find there was sufficient evidence presented to sustain a conviction for receiving stolen property and complicity to grand theft.
 {¶ 71} Appellant's third assignment of error is overruled.
 {¶ 72} Manifest Weight of the Evidence
 {¶ 73} In his fourth assignment of error, Pesec claims that his conviction was against the manifest weight of the evidence.
 {¶ 74} "When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the *Page 19 
evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered." State v. Floyd, 11th Dist. No. 2005-T-0072, 2006-Ohio-4173, at ¶ 8, citing State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins (1997)78 Ohio St.3d 380, 387.
 {¶ 75} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Floyd at ¶ 9, citing Martin at 175. "The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Id., citingThompkins at 390 (Cook, J., concurring). "The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of witnesses." Id., citingState v. DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus.
 {¶ 76} In this case, there was evidence presented from which the trier of fact could determine that Pesec had committed the crimes of receiving stolen property and complicity to grand theft. As previously stated, Lomaz testified that he owned the personal property in question and did not give Pesec permission to take the property from him. However, regardless of this testimony, the real focus must be on Pesec's knowledge regarding ownership and who had rightful possession of the equipment. All that is necessary is "evidence of a wrongful taking from the possession of another * * *. Particular ownership is not vital as to the thief." State v. Ray, 9th Dist. No. 21233, 2003-Ohio-2159, at ¶ 11, quoting State v. Emmons (1978), 57 Ohio App.2d 173, 177. The record demonstrates that there was more than ample evidence presented to show that *Page 20 
Pesec clearly knew that he did not own or rightfully possess the equipment and that Pesec also knew that Gibel did not own or have a right to the equipment either.
 {¶ 77} To begin with, although Pesec claimed ownership, he never produced any documentation regarding the alleged land/equipment deal, such as a sales contract or sales receipts. Secondly, even if there was in fact such a deal, the price allegedly paid was unbelievably low. Pesec testified that he purchased the eighty-eight acres of real estate along with the personal property for $10,000, and that he paid in cash. Furthermore, the evidence established that the equipment was removed with guns drawn. There was also evidence presented to show that Pesec subsequently offered to "buy" the equipment from the bankruptcy trustee, a fact that undercuts Pesec's position that he had owned the equipment in the first place. In addition, the evidence also showed that Pesec did not act like he owned the property. In particular, Pesec stored the equipment but did not use it or try to sell it. Pesec also knew there was "bad blood" between Lomaz and Gibel and that Gibel had previously embezzled from Lomaz.
 {¶ 78} The trial court, as finder of fact, was free to believe the testimony of Lomaz; to discount Pesec's testimony that he believed he had legal title to the items of personal property; and to infer, based upon the evidence presented that Pesec had the requisite mens rea to commit complicity to grand theft. "When assessing witness credibility, [t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact." Floyd, at ¶ 10, citing State v.Awan (1986), 22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Id. citing City of Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at 8. "Furthermore, if the *Page 21 
evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict." Id.
 {¶ 79} We find that the verdict was supported by the manifest weight of the evidence.
 {¶ 80} Appellant's fourth assignment of error is overruled.
 {¶ 81} Alleged Bias of Trial Judge
 {¶ 82} In his fifth assignment of error, Pesec contends that the trial court was biased and had a conflict with hearing his case because the judge was familiar with and involved in civil litigation he had brought against Gibel involving these underlying facts.
 {¶ 83} Judicial bias is defined as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." State v. LaMar,95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 34.
 {¶ 84} A trial judge is "`presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity.'" Weiner v. Kwiat, 2d Dist. No. 19289, 2003-Ohio-3409, at ¶ 90, quoting Eller Wendy's Intl., Inc. (2000),142 Ohio App.3d 321, 340. "The existence of prejudice or bias against a party is a matter that is particularly within the knowledge and reflection of each individual judge and is difficult to question unless the judge specifically verbalizes personal bias or prejudice toward a party." Id.
 {¶ 85} Specifically, Pesec objects to the following statements the trial court made in open court. First, during defense counsel's closing argument, the court interrupted *Page 22 
defense counsel when he pointed out that there was civil litigation between Lomaz and Pesec. Pesec takes objection to the following remark made by the trial court: "Mr. Jakmides, for the record, so you know, I have had those cases in the past and within the last two months." Pesec also argues that during sentencing, the court was biased when she told him that she would not impose community control sanctions because he failed to "come clean with this Court."
 {¶ 86} We do not believe the trial judge's remarks indicated hostility or ill will or undue favoritism. The judge simply reiterated to the parties and counsel that she had familiarity with the case. However, Pesec can hardly claim that he was surprised by the court's involvement in the civil proceedings or that he "was unaware of this potential for conflict prior to the onset of the trial." To the contrary, the record demonstrates that before the trial began, the court, when ruling on the state's motion in limine, advised both counsel of her involvement in the civil litigation and expressed her belief that she would remain unbiased regardless of what evidence was admitted. The court stated: "Obviously, you both — you all know that I have the civil case as well, so I have heard bits and pieces of the civil litigation in this matter, so I am very familiar with what's going on. I'm not quite sure that I would at all be prejudiced by anything that comes in because I have a fairly good handle on what's going on in this case."
 {¶ 87} Moreover, even though we find no judicial bias, if Pesec believed the trial judge could not conduct herself in an impartial manner, he should have raised the issue directly with the trial judge at this pretrial stage and then followed the proper statutory procedures afforded him and filed an affidavit of prejudice with the Chief Justice of the Supreme Court of Ohio as soon as possible after he became aware of circumstances *Page 23 
he believed supported disqualification. R.C. 2701.03; Beer v.Griffith (1978), 54 Ohio St.2d 440, 441-442; In re Disqualification ofLotz Whitlach v. Whitlach, 100 Ohio St.3d 1236, 2002-Ohio-7480, at ¶ 5. However, he failed to do this. Nevertheless, we see no prejudice or bias in the trial judge's remarks. We overrule his fifth assignment of error.
 {¶ 88} The judgment of the Portage County Court of Common Pleas is affirmed.
JUDITH A. CHRISTLEY, J., Ret., Eleventh Appellate District, sitting by assignment, concurs in judgment only,
GENE DONOFRIO, J., Seventh Appellate District, sitting by assignment, concurs.
[1] Lomaz has been declared a vexatious litigator in federal court.
[2] There was no prior order being corrected though.
[3] Pesec argued below that he may have been entitled to the personal property under the theory of hereditaments, which would make ownership of the real estate relevant. However, this theory was not argued on appeal.
[4] This deposition was introduced as an exhibit to the trial court and was made part of the record. *Page 1