[Cite as *State v. Craig*, 2022-Ohio-2200.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2021-L-023** |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the Court of Common Pleas |
| MICHAEL C. CRAIG, | |
| Defendant-Appellant. | Trial Court No. 2020 CR 000239 |

**O P I N I O N**

Decided: June 27, 2022
Judgment: Affirmed

*Charles E. Coulson,* Lake County Prosecutor, and *Jennifer A. McGee,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Eric J. Cherry,* Bartos & Company, LPA, 20220 Center Ridge Road, Suite 160, Rocky River, OH 44116 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Michael C. Craig, appeals the December 18, 2020 and January 14, 2021 judgments of the Lake County Court of Common Pleas finding him guilty of 16 counts, including three counts of Aggravated Arson, and sentencing him to 22 years imprisonment. For the reasons set forth herein, the judgments are affirmed.

{¶2} In early 2020, appellant and his four children were homeless and staying at a homeless shelter. Appellant was getting treatment for his mental health issues and was on several prescriptions. However, for various reasons, he stopped taking these

medications. About a week later, he and his four children were in their car. He dropped the three youngest children off with their mother, then drove his oldest daughter to a GetGo gas station, told her to get out of the car and have a friend pick her up because he was going to kill himself. She asked him not to and went into the GetGo, seeking help. Moments later, appellant drove his vehicle through one of the gas pumps at a high rate of speed, striking another vehicle in the parking lot, crossing the street, and hitting another couple vehicles, before running into a fence.

{¶3} Bystanders approached his vehicle, but he told them he had a gun and would shoot them. Police arrived on the scene. Defying police instruction, appellant reversed the vehicle and attempted to drive away. However, the vehicle was on fire and did not make it far before becoming inoperable. Appellant then exited the vehicle and took cover behind the front tire, brandishing what turned out to be a pair of pliers in his hands and telling police it was a gun and that he would shoot them. He later admitted this was an attempt to provoke the police into killing him. Instead, an officer fired four beanbag rounds at appellant, causing him to drop the pliers. Appellant was then tasered twice before officers were able to handcuff him and pull him away from the burning vehicle. He received medical care before being Mirandized and interviewed.

{¶4} Appellant was indicted on 16 counts: Counts 1, 3, and 5, Aggravated Arson, felonies of the first degree, in violation of R.C. 2909.02(A)(1); Counts 2, 4, 6, and 7, Felonious Assault, felonies of the second degree, in violation of R.C. 2903.11(A)(2); Counts 8 and 9, Arson, felonies of the fourth degree, in violation of R.C. 2909.03(A)(1); Count 10, Vandalism, a felony of the fourth degree, in violation of R.C. 2909.05(B)(1)(a), with an additional finding that the value of the property or physical harm involved was

2

$7,500 or more; Count 11, Vandalism, a felony of the fourth degree, in violation of R.C. 2909.05(B)(1)(b), with an additional finding that the value of the property or physical harm involved was $7,500 or more; Count 12, Inducing Panic, a felony of the fourth degree, in violation of R.C. 2917.31(A)(3), with an additional finding that the value of the property or physical harm involved was $7,500 or more; Count 13 and 14, Aggravated Menacing, misdemeanors of the first degree, in violation of R.C. 2903.21; Count 15, Resisting Arrest, a misdemeanor of the second degree, in violation of R.C. 2921.33(A); and Count 16, Reckless Operation, a minor misdemeanor, in violation of R.C. 4511.20(A).

{¶5} Appellant initially pleaded not guilty, or in the alternative, not guilty by reason of insanity. The latter was later withdrawn, and the case proceeded to trial. Appellant asserted he was over-medicated, had blacked out, and did not remember anything that happened between telling his daughter to get out of the car and being on the other side of the road.

{¶6} The jury, though being instructed on blackout, found him guilty on all counts. The Court merged Count 2 with Count 1, Count 4 into Count 3, Count 6 into Count 5, and Count 8 into Count 1, and Counts 10 and 11 into Count 9 for purposes of sentencing. In summary, appellant was sentenced on Counts 1, 3, 5, 7, 9, 12, 13, 14, 15, and 16.

{¶7} The court sentenced appellant to an indefinite prison term with a stated minimum term of 10 years and a maximum term of 15 years on Count 1; a prison term of 10 years on each of Counts 3 and 5; two years on Count 7; 12 months on each of Counts 9 and 12; 90 days on each of Counts 13, 14, and 15; and a $100.00 fine on Count 16, suspended. Counts 1, 3, 9, and 12 were ordered to be served consecutively to each other; Counts 5 and 7 were ordered to be served concurrent to all other counts and

3

misdemeanors; Counts 13, 14, 15, and 16 were ordered to be served concurrent to all counts. In all, the stated aggregate minimum term to which appellant was sentenced was 22 years with a maximum term of 27 years.

{¶8} The court also ordered appellant pay court costs, costs of prosecution, and restitution to the victim, to wit: $4,800 to Lindsey Eckert and Samuel Ruckman, and $21,940.61 to Get-Go. Finally, the court ordered that appellant be subject to the registration and verification provisions of R.C. Chapter 2909.

{¶9} In his appeal, appellant assigns four errors for our review. The first states:

{¶10} Appellant was denied the effective assistance of counsel by failing to offer the testimony of a private psychologist either at trial in support of the affirmative defense of blackout or at sentencing in mitigation.

{¶11} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph 2 of the syllabus. "'Judicial scrutiny of counsel's performance must be highly deferential. * * * ' * * * In addition, '[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *.'" *Id.* at 379, 380, quoting *Strickland v. Washington*, 466 U.S. 668 (1984).

{¶12} We need not address the two prongs of appellant's ineffective assistance claim in the order set forth in *Strickland*; "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, * * * that course should be followed." *Strickland, supra,* at 697. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability

4

that, were it not for counsel's errors, the result of the trial would have been different." *Bradley, supra,* at paragraph three of the syllabus.

{¶13} Under his first assignment of error, appellant argues that by failing to offer the testimony of a medical expert on the issue of blackout either at trial or at sentencing in mitigation, he was denied effective assistance of counsel. He avers, however, only that the expert testimony "could have" supported a blackout defense. He also argues that at the very least, such testimony could not have hurt him. We disagree.

{¶14} Appellant initially pleaded not guilty by way of insanity. After two mental health evaluations to determine both his competency to stand trial and his mental state at the time of the offenses, he withdrew that plea. Defense counsel requested those evaluations be filed under seal; the court granted the request. As the Twelfth District has noted, "[i]t is generally a legitimate trial strategy for defense counsel not to present expert testimony * * * because such an expert might uncover evidence that further inculpates the defendant." *State v. Glover*, 12th Dist. Clermont No. CA2001-12-102, 2002-Ohio-6392, ¶25. Indeed, after a careful review of the record before this court, including the evaluations, it appears likely that calling the expert witnesses or presenting evidence from the reports would have been detrimental to appellant's argument. In light of this, the decision not to present evidence of the evaluations or explore additional experts was not unreasonable. Thus, we cannot agree there was a reasonable probability that the result of the trial would have been different had defense counsel presented expert testimony.

{¶15} Moreover, counsel did not fail to address the issue entirely. Indeed, the record shows trial counsel thoroughly investigated any potential defenses surrounding appellant's mental state. At trial, counsel objected and argued at every available

5

opportunity on the issue of blackout and filed a 15-page sentencing memorandum in support of mitigating appellant's sentence. In addition, they requested a second mental health evaluation but chose not to present evidence of it. Even if we were to question the wisdom of this tactic, "'debatable trial tactics' do not 'constitute a deprivation of the effective assistance of counsel.'" *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980), quoting *People v. Miller*, 7 Cal.3d 562 (1972).

{¶16} Additionally, at sentencing the trial court considered appellant's mental health problems and determined them to be a factor making the offense less serious. Thus, we cannot agree that appellant was prejudiced by the failure to submit expert testimony in support of sentencing mitigation, as the court had already found this factor to mitigate the seriousness of the offense.

{¶17} Thus, we cannot say that there was a reasonable probability that the result would have been different had trial counsel submitted the testimony of a medical expert on the issue of appellant's mental health. As appellant cannot show prejudice, we find appellant was not denied the effective assistance of counsel.

{¶18} Appellant's first assignment of error is without merit.

{¶19} His second states:

{¶20} The trial court improperly instructed the jury on the blackout affirmative defense.

{¶21} Under this assignment of error, appellant avers that the trial court erred in failing to instruct the jury that blackout is an affirmative defense which appellant must establish by a preponderance of the evidence.

{¶22} This court generally reviews jury instructions under an abuse of discretion standard, as long as the instruction is a correct statement of law. If the instruction was

6

not a correct statement of law, appellate courts review the instruction de novo to "'determine whether the incorrect jury instruction probably misled the jury in a matter materially affecting the complaining party's substantial rights.'" *State v. Kovacic,* 11th Dist. Lake No. 2010-L-018, 2010-Ohio-5663, ¶17, quoting *Humphry v. Belmont,* 7th Dist. Belmont No. 95-BA-51, 1998 WL 670669, *5-6 (Sept. 24, 1998). However, at trial, defense counsel conceded the instruction was proper. Therefore, we are limited to reviewing for plain error. *State v. Gordon,* 11th Dist. Ashtabula No. 92-A-1696, 1996 WL 200564, *1. "An erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, ¶56.

**{¶23}** The jury instructions, which were taken verbatim from OJI 417.07, stated that the jury must find appellant not guilty if it had a reasonable doubt whether defendant was conscious at the time of event. He contends the jury instruction should have read the jury was required to find appellant not guilty if it found by a preponderance of evidence that appellant was in a blackout. In support of his argument, appellant relies on *State v. Ireland,* 155 Ohio St.3d 287, 2018-Ohio-4494, a plurality opinion, which found blackout was an affirmative defense.

**{¶24}** However, in *Ireland* the Supreme Court of Ohio reviewed nearly identical jury instructions, which added only an additional statement that the burden of proof on blackout is on the defendant to prove beyond a reasonable doubt. The lead opinion found the jury instructions in that case to be adequate. We fail to see how adding to the jury instructions the affirmative defense language here would have made the outcome more likely in his favor, as it further explains that the burden is on appellant to prove the matter.

7

**{¶25}** Appellant admits that due to counsel's performance at trial, it was unlikely that he would have been able to prove blackout by a preponderance of the evidence. While we have found that his counsel was not ineffective, we agree it was unlikely appellant would have been able to prove blackout even had the jury instruction been as appellant now requests. The only mention of appellant blacking out is his statements to police during his interview that he "blacked out," "snapped," and couldn't remember what happened. As this and other courts have held, a blackout episode is more than a loss of remembrance. *State v. Cutlip*, 11th Dist. Lake No. 99-L-149, 2001 WL 687493, *6 (June 15, 2001). *See also State v. Griffin*, 10th Dist. Franklin No. 86AP-759, 1988 WL 4651, *3 (Jan. 19, 1988) ("[T]he blackout defense is more than just loss of memory or failing to remember what occurred. Blackout or unconsciousness is a defense only where such condition prevented the defendant from taking action that he is legally required to take under the circumstances or, possibly also, in situations where the unconsciousness or blackout prevents a defendant from forming a specific intent with respect to an act which he voluntarily performs.")

**{¶26}** Accordingly, appellant cannot show plain error, and his second assignment of error is without merit.

**{¶27}** His third states:

**{¶28}** The trial court improperly considered the prosecutor's testimony regarding the content of jail calls not played for the court either during trial or at sentencing which affected its review of the sentencing factors in R.C. 2929.11 and 2929.12.

**{¶29}** Under this assignment of error, appellant argues the trial court erred in three ways: (1) it erroneously considered the content of jail calls not played for the court but discussed by the prosecutor at sentencing; (2) it failed to properly balance the sentencing

8

factors in R.C. 2929.11 and R.C. 2929.12; and (3) it erred in determining consecutive sentences were necessary to protect the public. We address each in turn.

{¶30} First, appellant asserts the trial court improperly considered the content of the phone calls made from jail because the calls were not played at trial. At the sentencing hearing, the state commented that in listening to the calls appellant made from jail, at no time did he ever express remorse, and at one point bragged about being a "celebrity." However, it is well established that "the Rules of Evidence, per Evidence Rule 101(C)(3), do not apply to sentencing * * *." *State v. Anderson*, 11th Dist. Trumbull No. 2019-T-0024, 2020-Ohio-1334, fn 1. Further, while appellant asserts that "[t]he [c]ourt's ultimate finding regarding remorse is thus solely based on the testimony of the Prosecutor" regarding the content of phone calls appellant made from jail, he admits that he indicated his remorse both in the pre-sentence investigation report, which trial counsel noted at sentencing, and the sentencing memorandum. Appellant had ample opportunity to refute the prosecutor's statements. Thus, we cannot agree that the court's finding was based solely on the prosecutor's testimony.

{¶31} Moreover, even if we were to find the trial court improperly considered the content of the jail phone calls without hearing them firsthand, this error alone would not constitute clear and convincing evidence that the record does not support the trial court's findings on his sentence. A careful review of the record in this case, as further discussed below, does not suggest the trial court's sentence was unsupported or contrary to law.

{¶32} Second, appellant argues the court erred in considering the R.C. 2929.11 and R.C. 2929.12 factors making his conduct more or less serious. Specifically, he argues that court should have given more weight to rehabilitation of the appellant and his

9

remorsefulness. However, "[a] trial court is not required to give any particular weight or emphasis to a given set of circumstances; it is merely required to consider the statutory factors in exercising its discretion." *State v. Delmanzo,* 11th Dist. Lake No 2007-L-218, 2008-Ohio-5856, ¶23. Further, "R.C. 2953.08(G)(2)(b) * * * does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *See State v. Jones,* 163 Ohio St.3d 242, 2020-Ohio-6729, ¶39. Nor does that section permit "an appellate court to independently weigh evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶42.

{¶33} The trial court stated that it considered the R.C. 2929.11 and R.C. 2929.12 factors and listed those which made the conduct more or less serious. Because we cannot engage in a re-weighing of the factors the trial court considered at sentencing or question the trial court's determination as to appellant's rehabilitation or remorsefulness, appellant's argument is without merit.

{¶34} Finally, appellant challenges the imposition of consecutive sentences. R.C. 2929.14(C)(4) permits a trial court to impose consecutive sentences if it "finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* Additionally, the trial court must find at least one of the following:

{¶35} (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18

10

of the Revised Code, or was under post-release control for a prior offense.

{¶36} (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶37} (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. R.C. 2929.14(C)(4).

{¶38} "If the court has properly made the required findings in order to impose consecutive sentences, [the appellate court] must affirm those sentences unless [it] 'clearly and convincingly' find[s] '[t]hat the record does not support the court's findings.'" *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶21. Accord, *State v. Sari*, 11th Dist. Lake No. 2016-L-109, 2017-Ohio-2933, ¶18. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, ¶29.

{¶39} Here, the trial court determined that consecutive sentences:

{¶40} are necessary to protect the public and punish the offender, are not disproportionate to his conduct and the danger he poses, and the harm here is so great or unusual that a single term could not adequately reflect the seriousness of his conduct, and his criminal history shows that consecutive terms are needed to protect the public.

{¶41} Appellant argues that the trial court erred in issuing consecutive sentences by considering potential harm, rather than actual harm; that is, he argues no one was physically harmed as a result of his actions. However, one victim testified that he suffered a concussion, had general soreness, and some back pain due to a bulging disc. Another

11

victim, who was pregnant at the time, had to undergo additional testing because of her elevated high blood pressure. More importantly, his argument does not consider the substantial economic harm and psychological harm caused by appellant's actions. Thus, we cannot agree that the trial court improperly found R.C. 2929.14(C)(4)(b) applicable.

{¶42} Appellant further argues that subsection (c), relating to his criminal history, should not apply here. The record reflects, however, that appellant has a lengthy criminal history, including previous prison terms. The trial court made the requisite findings and incorporated the same into the sentencing entry. We cannot agree that appellant's sentence is clearly and convincingly unsupported by the record.

{¶43} Thus, appellant's third assignment of error is without merit.

{¶44} His fourth states:

{¶45} The state failed to offer admissible evidence regarding the value of economic damage to property as required by the enhancement clause of a Vandalism charge and an essential element to Inciting Panic.

{¶46} Counts 10 and 11, Vandalism, and Count 12, Inducing Panic, each have enhancement clauses regarding the monetary value of property damage. At trial, the state presented the testimony of the GetGo manager regarding the costs to repair the gas pumps and other gas station property. Appellant, through trial counsel, moved to dismiss Count 12 and remove the enhancement clauses on Count 10 and 11 under Crim.R. 29 based on the failure to demonstrate the requisite dollar amount of $7,500 and arguing the testimony as to the dollar amount was hearsay. The court found that appellant's objections regarding the amount of damages testified to went to weight of the evidence, not admissibility, and denied the motion. On appeal, appellant contends that the motion should have been granted. It should be noted that Counts 10 and 11 merged with Count

12

9, Arson, at sentencing, thus there are no convictions on Counts 10 and 11.  As such, for this assigned error, we limit our review to Count 12, Inducing Panic.

{¶47}  Hearsay is defined as "[a] statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."   Evid.R.  802.   Hearsay  is  inadmissible  unless  one  of  the  enumerated exceptions applies.  The exception most relevant here is the business records exception found in Evid.R. 803(6).  To be admissible under this exception, the record must display four essential elements: (1) it must have been kept in the regular course of business; (2) it must stem from a source who had personal knowledge of the acts, events, or conditions; (3) it must have been recorded at or near the time of the transaction; and (4) a foundation must be established by the testimony of either the custodian of the record or some other qualified person.  Appellant courts apply a de novo review to determine whether testimony constitutes hearsay or non-hearsay.  *State v. Kratochvill,* 11th Dist. Lake No. 2019-L-088, 2020-Ohio-7000, ¶27.

{¶48}  At trial, the state presented the testimony of a GetGo manager regarding the costs to repair and replace the gas pump and other assets; another victim testified as to the cost of his leased Ford F150.  Appellant argues these statements were hearsay and should not have been admitted into evidence.  Appellee disagrees.  Both cite cases in support; however, neither case is closely analogous to the facts at bar.

{¶49}  Appellant cites *State v. Comstock*, 11th Dist. Ashtabula No. 96-A-0058, 1997 WL 531304 (Aug. 29, 1997).  There, the state offered an invoice from ServPro as evidence of the cost to repair damage to a township building damaged by arson.  The state relied on the business records exception found in Evid.R. 803(6) and attempted to

13

establish the foundation of the record by offering the testimony of a township trustee with no personal knowledge of the ServPro's record keeping systems. This Court found that an insufficient foundation was laid as to admit the documents, noting:

{¶50} The phrase "other qualified witness" is to be interpreted broadly. *State v. Vrona* (1988), 47 Ohio App.3d 145, 547 N.E.2d 1189. This means that the witness laying the foundation need not have firsthand knowledge of the acts, events, or conditions underlying the record. The foundational witness must, however, be sufficiently familiar with the business and the procedures employed in the record's preparation that he or she can testify that the record is what it purports to be and was made in the ordinary course of business. See Weissenberger, Ohio Evidence (1997) 422, Section 803.79. If the witness can not provide this essential testimony, then the record should not be admitted under Evid.R. 803(6). See, e.g., State v. Davis (1991), 62 Ohio St.3d 326, 342-343, 581 N.E.2d 1362. *Comstock, supra,* at *7.

{¶51} Unlike in *Comstock,* this is not a case of someone entirely unrelated to the records testifying as to their veracity. In this case, an employee of the company from which the record originated presented the testimony. Thus, *Comstock* is not closely analogous to the case at bar.

{¶52} Nor, however, is this case more closely analogous to *State v. Towers,* 10th Dist. Franklin, No. 00AP-508, 2000 WL 1724878 (Nov. 21, 2000), which the state on appeal offers in support. There, a mall manager testified as to the amount of lost revenue during the period of time the stores were closed due to a kidnapping. In that case, she herself was asked to come up with the amount of lost revenues for the stores. When asked, she testified that the source of the information she testified to was "my corporate office and our director of loss prevention." Importantly, she specifically affirmed that "as a result of [her] job as Eastland Mall manager, [she kept] track of revenues that are earned by the different mall stores and also the mall stores in general" and that she knew the

14

estimated amount of the salary of mall employees. There, the appellant argued that her testimony was inadmissible hearsay as she didn't have firsthand knowledge of the numbers because she consulted with her corporate office. In rejecting that argument, the Tenth District noted "that the present case is distinguishable from other cases where a numerical figure is presented as evidence through the testimony of a witness who had no independent ability to testify concerning the numerical figure."

{¶53} Here, however, it is not clear from the record that the GetGo manager had an independent ability to testify concerning the numerical figures she presented. While she testified that she had knowledge of the lost revenues by nature of her role as store manager, she did not testify that she had any role in creating the records she presented. To the contrary:

{¶54} [DEFENSE COUNSEL:] How do you know the cost of the damage that was done?

{¶55} [GETGO MANAGER:] It was – it's a corporate store. So the corporate, the ones that handle all that were able to tell me how much the actual damage was. They sent over the invoices and the breakdown and everything like that. But that's not something I particularly handle. They're, you know, supervising it and everything and in charge of it. But as far as cost and stuff like that, that handles at corporate. Corporate level.

{¶56} [DEFENSE COUNSEL:] So you don't have personal knowledge aside from what they provided you?

{¶57} [GETGO MANAGER:] Yes, correct. From what they gave me.

{¶58} She did testify that she had knowledge of the store's receipts and how much business was typically done that time of day on a Saturday. Thus, she could properly testify as to the amount of economic loss from the gas station being shut down that day. However, the dollar figure presented did not differentiate between economic loss, the

15

Case No. 2021-L-023

clean-up crew, and lost property and merchandise. The only two numbers she presented were the cost of the new gas pump ($13,000-$14,000), a number given to her by corporate, and the total amount of damages ($21,940). Because an appropriate foundation has not been laid for the admission of those figures, her testimony as to the dollar amount was inadmissible hearsay.

{¶59} It should be noted, however, that by this decision we do not categorically find that all evidence partially based upon sources other than the witness testifying should be excluded as hearsay, nor that a store manager can never testify as to the amount of damages or economic loss. As the Tenth District noted in *Towers,* "[i]f this reasoning was strictly followed, the ability of the court to allow evidence in order to determine the truth would be seriously undermined. * * * When the goal is to determine the 'truth of the matter asserted,' little would be accomplished by requiring every fact that may be based upon hearsay to be verified in such an inefficient manner." *Id.* at *4. Nevertheless, the state here failed to lay a sufficient foundation for the GetGo manager's testimony as to the total amount of damages. Therefore, the admission of her testimony was erroneous.

{¶60} However, this error was harmless as the testimony as to the value of the Ford F150 alone was sufficient to establish this amount. It is well established that the owner of personal property can testify as to the value of that property. *See State v. Baker*, 2nd Dist. Montgomery No. 26703, 2016-Ohio-315, ¶20, quoting *Smith v. Padgett*, 32 Ohio St.3d 344, 347 (1987) ("Ohio law has long recognized that an owner of either real or personal property is, by virtue of such ownership, competent to testify as to the market value of the property."). *See also State v. Pesec*, 11th Dist. Portage No. 2006-P-0084, 2007-Ohio-3846, ¶40, citing *State v. Clements*, 8th Dist. Cuyahoga No. 36914, 1978 WL

16

217769 (Jan. 30, 1978), and *Bishop v. East Ohio Gas*, 143 Ohio St. 541 (1944). ("An owner of personal property is qualified to give an opinion as to the value of personal property.")  Here the same logic which permits property owners to testify as to the value also applies to a vehicle lessee.  The lessee has reason to know the value of the vehicle leased and must maintain insurance on the same. Thus, we find that, like a vehicle owner, a lessee can also testify as to the value of the vehicle they're leasing.

{¶61}  The vehicle lessee testified the 2020 Ford F150 was less than a year old, that they had to pay a $1,000 deductible, and that the insurance company paid off the lease for approximately $37,500.  This testimony alone was sufficient to meet the $7,500 threshold.

{¶62}  Thus, appellant's final assignment of error is without merit.

{¶63}  In light of the foregoing, the judgments of the Lake County Court of Common Pleas are affirmed.


MATT LYNCH, J., concurs,

THOMAS R. WRIGHT, P.J., concurs in judgment only.

Case No. 2021-L-023