[Cite as *In re M.T.*, 2018-Ohio-4553.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

In Re:

M.T.

JUDGES:
Hon. W. Scott Gwin, P.J
Hon. William B. Hoffman, J.
Hon. Craig R. Baldwin, J.

Case No. 18CA28

O P I N IO N

CHARACTER OF PROCEEDINGS:

Appeal from the Richland County Court of Common Pleas, Juvenile Division Case No. 16-DEP-6

JUDGMENT:

Affirmed

DATE OF JUDGMENT ENTRY:

November 8, 2018

APPEARANCES:

For Plaintiff-Appellee

TIFFANY BIRD
Richland County Children Services
731 School Road
Mansfield, OH 44907

For Defendant-Appellant

DARIN AVERY
105 Sturges Avenue
Mansfield, OH 44903

*Hoffman, J.*

{¶1}   Appellant Dominique Rollison ("Father") appeals the March 9, 2018 Judgment Entry entered by the Richland County Court of Common Pleas, Juvenile Division, which overruled his objections to the magistrate's October 2, 2017 decision, and approved and adopted said decision as order of the court.  Appellee is Richland County Children Services Board ("RCCSB").

STATEMENT OF THE FACTS AND CASE

{¶2}   Maygan Tackett ("Mother") and Father are the biological parents of the minor child.  Mother is the mother of five children.  Father is the father of six children. Mother and Father share one child together in addition to the child in this matter.  On January 13, 2016, RCCSB filed a complaint, alleging the minor child was dependent and neglected.  The child was five months old, malnourished, developmentally delayed, and being cared for by her six year old sibling.  RCCSB also filed separate complaints with respect to Mother's other children.  On February 8, 2016, the child was placed in the temporary custody of Annette Knuutila, the maternal aunt, who was also caring for one of the child's siblings.

{¶3}   On March 14, 2016, Mother agreed to a finding of dependency, and further agreed the child should remain in the temporary custody of Knuutila. Father admitted the child was dependent at an adjudicatory and dispositional hearing conducted on April 21, 2016.  The trial court adjudicated the child dependent and ordered she remain in the temporary custody of Knuutila.  The trial court conducted review hearings on April 29, June 1, and August 2, 2016, and maintained the status quo each time.

{¶4} Father filed a motion for legal custody on October 31, 2016. Knuutila filed a motion for legal custody on November 21, 2016. RCCSB filed a motion for disposition, seeking to extend temporary custody to Knuutila. The trial court conducted an annual review hearing on December 23, 2016, and extended its order of temporary custody to Knuutila.

{¶5} The guardian ad litem filed a report on February 27, 2017, recommending placement of the child with Knuutila continue and visitation with Father begin on a graduated schedule. The guardian ad litem filed an updated report on May 15, 2017, recommending Father be granted legal custody of the child. The magistrate conducted a hearing on the motions for legal custody on May 15, and August 23, 2017.

{¶6} The evidence presented at the hearing revealed the following. Father's paternity was not established until he was ordered to submit to genetic testing. However, Father conceded he strongly suspected he was the child's father. As soon as paternity was established, Father filed for legal custody.

{¶7} Father's parenting time with the child was to begin with a few hours in March, 2016, and increase to four days/three nights by May, 2016. There was no evidence these visits occurred. Between August and October, 2016, Father had every other weekend visits. Father made no attempts to contact Knuutila about parenting time between October, 2016, and March, 2017. Father commenced visits again in mid-March, 2017. Father demonstrated strong parenting behaviors. He was warm, kind, attentive, and respectful. Father's last visit with the child was June 18, 2017. Communication and timeliness problems plagued Father's parenting time. Neither Father nor Knuutila were accommodating to the other which prevented resolution of the problems.

{¶8}   Father was 33 years old at the time of the hearing.  He lives with his girlfriend, their daughter, and the child's brother in a duplex, which he rents. Father supported the family until a few months prior to the hearing.  Father had had several jobs during the pendency of the case, but his job opportunities were hindered by his felony record.  Father has served three two-year prison terms.  He was most recently released from prison in 2014, and successfully completed his parole.

{¶9}   In September, 2016, Father was arrested and charged with weapons under disability, possession of posh, and possession of carfentanyl.  The charges were dismissed while further investigation was ongoing, but Father was re-indicted in July, 2017.  Father advised the trial court he planned to plead guilty to the weapons charge, and expected the possession charges would be dismissed.  Although Father hoped to be sentenced to probation, he acknowledged a prison sentence was a possibility.

{¶10}  Due to the pending felony charges and the uncertainty of Father's ability to care for the child, the guardian ad litem verbally recommended the child be placed in the legal custody of Knuutila.  Mother, through her attorney, supported placement of the child with Knuutila.

{¶11}  The child is fully integrated into Knuutila's home.  Knuutila and her husband have four children in addition to the child and her sibling.  Knuutila is a stay-at-home mother.  Her husband works and supports the family.  The child is fully recovered from the effects of the neglect she experienced as an infant.  She is a happy, healthy child. Knuutila ensures frequent contact between the child, her maternal grandmother, and her two siblings who live with the maternal grandmother.

{¶12} Knuutila and her husband have been married since 2004. They are able to give the child a stable and consistent home life and maintain her relationships with her siblings and maternal relatives. They have adequate resources to provide for their family's needs. Father is unable to offer the child the same stability, consistency, and resources. Father's willingness to maintain the child's relationships with her siblings and relatives is questionable as he does not appear to value those bonds.

{¶13} Via Magistrate's Decision filed October 2, 2017, the magistrate recommended the child be placed in the legal custody of Knuutila with RCCSB maintaining protective supervision. Father filed objections to the magistrate's decision and a motion for transcript at state's expense on October 11, 2017. Via Judgment Entry filed March 9, 2018, the trial court overruled Father's objections and approved and adopted said decision as order of the court. The trial court found Father failed to "state with particularity all grounds for objection" as required by Juv. R. 40(D)(3)(b)(ii); therefore, the objections were "insufficient and otherwise defective on their face."

{¶14} It is from this judgment entry, Father appeals, raising as his sole assignment of error:


THE COURT'S FINDING THAT PLACING M.T. IN THE LEGAL CUSTODY OF HER MATERNAL AUNT SERVED HER BEST INTEREST WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.


{¶15} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

**{¶16}** We note legal custody does not divest parents of residual parental rights, privileges, and responsibilities. *In re C.R.,* 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188 at ¶ 17. Accordingly, Father may petition the trial court in the future for a modification of custody. *Id.*

**{¶17}** In Ohio, the statutorily permissible dispositional alternatives in a dependency, neglect, or abuse case are enumerated in R.C. 2151.353(A). *See, e.g., In re S.Y.,* 5th Dist. Tusc. No. 2011 AP04 0018, 2011–Ohio–4621, ¶ 31. In particular, R.C. 2151.353(A)(3) provides: "If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition: * * * Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. * * *."

**{¶18}** A trial court "must have wide latitude in considering all the evidence" and a custody decision will not be reversed absent an abuse of discretion. *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997–Ohio–260. As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the finder of fact could base its judgment. *Cross Truck Equip. Co. v. The Joseph A. Jeffries Co.,* 5th Dist. No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**{¶19}** Unlike a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is a preponderance of the evidence. *In re S.D.,* 5th Dist. Stark Nos. 2013CA0081 & 2013CA0082, 2013–Ohio–5752, ¶ 32 (Citations omitted).

**{¶20}** In this type of dispositional hearing, the focus is on the best interest of the child. *In re C.R.,* 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188; *In re P.S.,* 5th Dist. No. 2012CA00007, 2012–Ohio–3431. Despite the differences between a disposition of permanent custody and legal custody, some Ohio courts have recognized "the statutory best interest test designed for the permanent custody situation may provide some 'guidance' for trial courts making legal custody decisions." *In re A.F.,* 9th Dist. No. 24317, 2009–Ohio–333 at ¶ 7, citing *In re T.A.,* 9th Dist. No. 22954, 2006–Ohio–4468 at ¶ 17. The test would thus encompass a consideration of factors including, but not limited to: (1) the child's interaction with his or her parents, siblings, relatives, foster caregivers, and others, (2) the child's wishes, which may be expressed by the guardian ad litem, (3) the child's custodial history, and (4) the need for a legally secure permanent placement. *See* R.C. 2151.414(D)(1).

**{¶21}** At the time of the hearing, Father had been indicted on charges of weapons under disability and possession of drugs. Father advised the trial court he planned to plead guilty to the weapons charge, and expected the possession charges to be dismissed. Father hoped to be sentenced to probation, but acknowledged a prison sentence was a possibility. Because Father had previously served three prison terms, there was a strong likelihood he would be sentenced to prison. Father's legal status created instability and inconsistency for the child. The child has thrived in Knuutila's care,

overcoming the neglect she experienced as an infant.  The child had a loving relationship with Knuutila and her family.  Knuutila nurtured the child's relationships with her siblings and maternal relatives.  Knuutila offered a stable, consistent home for the child.  The guardian ad litem recommended the child be placed in the legal custody of Knuutila.

{¶22}  Based upon the foregoing and the entire record in this matter, we find the trial court's decision is supported by a preponderance of the evidence, and the award of legal custody to Knuutila was in the best interest of the child.

{¶23}  Father's sole assignment of error is overruled.

{¶24}  The judgment of the Richland County Court of Common Pleas, Juvenile Division, is affirmed.  Costs assessed to Appellant.

By: Hoffman, J.

Gwin, P.J.  and

Baldwin, J. concur