[Cite as *In re C.B.*, 2018-Ohio-5303.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. John W. Wise, P.J. |
| IN RE C.B., C.B., AND B.B. | : | Hon. Patricia A. Delaney, J. |
| NEGLECTED CHILDREN | : | Hon. Earle E. Wise, Jr., J. |
|  | : |  |
|  | : | Case Nos. 18-COA-022 |
|  | : | 18-COA-023 |
|  | : | 18-COA-024 |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Ashland County Court
of Common Pleas, Juvenile Division,
Case Nos. 20153046, 20153047,
20153048

JUDGMENT:                      AFFIRMED

DATE OF JUDGMENT ENTRY:      December 26, 2018

APPEARANCES:

For Mother-Appellant:                  For ACDJFS -- Appellee:

EMILY M. BATES                      CHRISTOPHER R. TUNNELL
46 W. Main Street                 ASHLAND COUNTY PROSECUTOR
Ashland, OH 44805

                                          JOSHUA T. ASPIN
                                          110 Cottage St., 3rd Floor
                                          Ashland, OH 44805

*Delaney, J.*

{¶1}   Mother-Appellant appeals the May 9, 2018 judgment entry of the Ashland County Court of Common Pleas, Juvenile Division. Appellee is the Ashland County Department of Job and Family Services ("ACDJFS").

**FACTS AND PROCEDURAL HISTORY**

{¶2}   On October 29, 2015, ACDJFS filed complaints with the Ashland County Court of Common Pleas, Juvenile Division alleging Mother's three minor children were neglected based on Mother possessing and/or using a controlled substance and not providing adequate parental care. Mother's three children are B.B., born on October 12, 2010, and twins, C.B. and C.B., born on August 30, 2011. Father of children was not involved in the children's care. The children were removed from Mother's care on October 29, 2015.

{¶3}   Following an adjudicatory hearing, the trial court found the children were neglected under R.C. 2151.03(A)(2). ACDJFS requested the children be placed in the temporary or legal custody of Maternal Aunt and Uncle. On January 21, 2016, the trial court conducted a dispositional hearing. By judgment entry filed February 3, 2016, the trial court declined to place the children in the custody of Maternal Aunt and Uncle. The trial court entered a dispositional order placing the children in the temporary custody of the ACDJFS.

{¶4}   The concern in the case was Mother's substance abuse issues. Mother acknowledged a lengthy history of drug abuse and depression. Mother has prior drug convictions and in September 2015, she was indicted for felony drug possession, DUS, and drug paraphernalia. A case plan was developed for Mother that required Mother to

participate in drug counseling, submit to random drug tests, maintain her sobriety, and cease any criminal activity. Mother was also required to complete a mental health assessment and follow any recommendations.

{¶5}   On August 8, 2016, ACDJFS filed a motion for annual review and motion to extend the temporary custody order. A hearing was held on the motion on October 3, 2016. The trial court found Mother had made progress on her case plan requirements, especially in the area of abstaining from drug use. Mother had taken 31 drug tests and tested negative on all tests. Mother was living with her father. Mother's brother, a convicted sex offender, also lived with father. The children were in the temporary custody of ACDJFS, but ACDJFS had placed them with Maternal Aunt and Uncle since approximately 2015. At the hearing, evidence was presented of a domestic violence incident between Maternal Aunt and Uncle and Uncle was out of the home for approximately six months. The Guardian Ad Litem did not support the children remaining in the home of Maternal Aunt and Uncle. Based on the evidence, the trial court extended the temporary custody order and the children remained in the temporary custody of ACDJFS for an additional six months.

{¶6}   Mother had progressed in her case plan where she had in-home overnight visitation with the children. The children were returned to Mother on January 13, 2017 and resided with Mother until February 28, 2017.

{¶7}   On May 9, 2017, ACDJFS filed a motion to modify disposition. ACDJFS requested the trial court terminate the existing temporary custody order and grant legal custody of the children to Maternal Aunt and Uncle.

{¶8}   A hearing was held before the Magistrate on July 28, 2017. The following evidence was adduced at the hearing. Mother had been participating in her case plan. She had maintained abstinence from drugs since January 2016 and passed multiple drug screens. She was taking Suboxone. Mother was not aware that her case plan required that she needed a mental health assessment separate from her substance abuse treatment, but those issues were addressed in her substance abuse treatment. Mother broke her wrist in March 2017 and missed some sessions of group treatment. After February 28, 2017, ACDJFS added parent education to the case plan.

{¶9}   Mother lived with her father. She was unemployed and cared for her father full-time. Mother's brother also resided with his father. Mother's brother was classified as a Tier III registered sex offender based on a 2005 conviction for two counts of rape and two counts of gross sexual imposition. In March 2017, he was convicted in Lorain County of vandalism, breaking and entering, and theft and convicted in Cuyahoga County of vandalism, breaking and entering, and theft. He started his nine-month prison term on April 10, 2017.

{¶10} Mother told ACDJFS that her brother moved out of her father's home on June 21, 2016. In February 2017, ACDJFS received a report that her brother was living in his father's home and parked his car behind the home. ACDJFS and an officer from the Ashland County Sheriff's Department reported to the home on February 20, 2017. There was evidence that the brother was present in the home, but it was undetermined if he was living in the home. ACDJFS removed the children from Mother's home on February 28, 2017, based on brother's presence in the home.

{¶11} There were some concerns with Mother's visitation with children. Mother would provide sugary treats for the children, who had dental issues, and Mother appeared to favor one child over the other two children. Maternal Aunt supervised visitation with Mother, but she requested that she no longer supervise visitation due to conflict between her and Mother. ACDJFS now supervises visitation.

{¶12} Mother was charged with Driving under FR Suspension in October 2016 and November 2016. In February 2017, Mother was charged with and found guilty of Petty Theft because she did not pay for items through the self-checkout lane at Walmart. The children were with Mother after she was taken to the loss avoidance room.

{¶13} Father of the children was serving a four-year prison sentence for aggravated robbery and robbery. His release date from prison was January 11, 2020.

{¶14} The children had been placed with Maternal Aunt and Uncle for almost a year and a half. Maternal Aunt and Uncle were both employed; Maternal Aunt worked at home until the children went to school, and in the summer, the children attended a day camp. Two children were in first grade, with one experiencing issues with reading. One child was entering kindergarten and tested for autism, but was determined to be globally delayed. The children's paternal grandparents assisted with care. The children shared a bedroom in the ranch-style home.

{¶15} There was a domestic violence incident between Maternal Aunt and Uncle where the children were present. Maternal Uncle left the home for six months. He completed an alcohol treatment program and attended AA. He was tested randomly for alcohol use and had not had any positive tests. There was another alleged incident of

domestic violence where Uncle was accused of drinking and breaking Aunt's nose. It was determined Uncle was not drinking and the break to Aunt's nose was an old injury.

{¶16} The GAL recommended Maternal Aunt and Uncle be granted legal custody of the children.

{¶17} The magistrate issued her decision on September 25, 2017. The magistrate found it was in the best interests of the children to grant legal custody to Maternal Aunt and Uncle.

{¶18} Mother filed objections to the Magistrate's Decision. She argued ACDJFS did not make reasonable efforts to prevent the continued removal of the children from the home and did not make reasonable efforts towards reunification. She argued the evidence showed Mother made significant progress with her case plan and therefore it would be in the best interests of the children to be placed with Mother. ACDJFS did not respond to Mother's objections.

{¶19} The trial court considered Mother's objections and conducted an independent review of the evidence. On April 5, 2018, in an extremely detailed and thorough judgment entry, the trial court overruled Mother's objections, but found the Magistrate's Decision did not specifically address which best interest factors of R.C. 3109.04(F)(1) applied to the case to support a finding that it was in the best interest of the children to be placed in the legal custody of Maternal Aunt and Uncle. The trial court remanded the matter to the magistrate to make specific findings of fact as to which best interest factors applied to the case.

{¶20} On April 27, 2018, the magistrate issued her findings of fact as to the best interest factors under R.C. 3901.04(F)(1).

{¶21} On May 9, 2018, the trial court considered the magistrate's findings of fact. It found the magistrate's decision was supported by the evidence. It accepted and adopted the Magistrate's Decision to grant legal custody of the children to Maternal Aunt and Uncle. The trial court ordered incremental increases in parenting time with Mother.

{¶22} It is from this judgment Mother now appeals.

## ASSIGNMENTS OF ERROR

{¶23} Mother raises three Assignments of Error:

{¶24} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF CUSTODY TO MATERNAL AUNT AND UNCLE WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶25} "II. THE TRIAL COURT ERRED IN GRANTING CUSTODY TO THIRD PARTIES WHEN ACDJFS DID NOT MAKE REASONABLE EFFORTS TO PREVENT THE CONTINUED REMOVAL OF THE CHILDREN FROM THE HOME.

{¶26} "III. THE TRIAL COURT ERRED IN GRANTING CUSTODY TO THIRD PARTIES WHEN ACDJFS DID NOT MAKE REASONABLE EFFORTS TOWARDS REUNIFICATION OF THE CHILDREN WITH MOTHER."

## ANALYSIS

### I. BEST INTEREST

{¶27} Mother contends in her first Assignment of Error that the trial court erred in finding it would be in the best interest of the children to be placed in the legal custody of Maternal Aunt and Uncle. We disagree.

{¶28} Legal custody does not divest parents of residual parental rights, privileges, and responsibilities. *In re C.R.,* 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188 at ¶ 17. Accordingly, Mother may petition the trial court in the future for a modification of custody. *Id.*

{¶29} In Ohio, the statutorily permissible dispositional alternatives in a dependency, neglect, or abuse case are enumerated in R.C. 2151.353(A). *See, e.g., In re S.Y.,* 5th Dist. Tusc. No. 2011 AP04 0018, 2011–Ohio–4621, ¶ 31. In particular, R.C. 2151.353(A)(3) provides: "If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition: * * * Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. * * *."

{¶30} A trial court "must have wide latitude in considering all the evidence" and a custody decision will not be reversed absent an abuse of discretion. *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997–Ohio–260. As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the finder of fact could base its judgment. *Cross Truck Equip. Co. v. The Joseph A. Jeffries Co.,* 5th Dist. No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶31} Unlike a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is a preponderance of the evidence. *In re S.D.,* 5th Dist. Stark Nos. 2013CA0081 & 2013CA0082, 2013–Ohio–5752, ¶ 32 (Citations omitted).

{¶32} In this type of dispositional hearing, the focus is on the best interest of the child. *In re C.R.,* 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188; *In re P.S.,* 5th Dist. No. 2012CA00007, 2012–Ohio–3431. Despite the differences between a disposition of permanent custody and legal custody, some Ohio courts have recognized "the statutory best interest test designed for the permanent custody situation may provide some 'guidance' for trial courts making legal custody decisions." *In re A.F.,* 9th Dist. No. 24317, 2009–Ohio–333 at ¶ 7, citing *In re T.A.,* 9th Dist. No. 22954, 2006–Ohio–4468 at ¶ 17. *In re M.T.*, 5th Dist. Richland No. 18CA28, 2018-Ohio-4553, 2018 WL 5920452, ¶¶ 16-20.

{¶33} R.C. 3109.04(F)(1) mandates as follows:

In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any

offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶34} The trial court remanded the matter to the magistrate to make detailed findings as to the best interest factors the magistrate considered in granting legal custody to Maternal Aunt and Uncle. The magistrate made the following findings as to the factors:

1) Mother wished to regain custody of her children;

2) The children were too young to interview, but the GAL recommended it would be in the best interest of the children to grant legal custody to Maternal Aunt and Uncle;

3) The children were bonded with both Mother and Maternal Aunt and Uncle. They demonstrated love and affection to both. Maternal Aunt and Uncle have served as the children's caregivers for much of the case. While in Maternal Aunt and Uncle's care, the children have regular interaction with extended members of the family, including Paternal Grandmother;

4) The children's mental, health, and educational needs were better addressed by Maternal Aunt and Uncle. Maternal Aunt and Uncle sought out testing and extra instruction for one child to address her different learning needs. The children had severe dental issues when they were placed in the custody of ACDJFS. Maternal Aunt and Uncle have addressed the children's dental health;

5) While in Mother's care, the children were exposed to Mother's criminal activity. Mother also exposed the children to her brother, a convicted sex offender;

6) Mother stated she was unable to work because she provided full-time care for her father. Evidence showed Mother was sometimes overwhelmed by caring for her father;

7) The was evidence of domestic violence in the home of Maternal Aunt and Uncle, which the children witnessed. Uncle participated in alcohol treatment and has tested negative on random screens; and

8) Mother has a child support order, but has not paid her child support obligation.

{¶35} The trial court independently reviewed the magistrate's best interest findings and determined they were supported by the evidence. We likewise find the preponderance of the evidence supports the trial court's determination it would be in the best interest of the children that legal custody be granted to Maternal Aunt and Uncle.

{¶36} Mother has made significant progress completing her case plan. Her commitment to sobriety as evidenced by multiple negative drug screens is commendable. The determination of legal custody, however, focuses on the best interest of the children. The children have been in the temporary custody of Maternal Aunt and Uncle for the

majority of this case. The children are bonded with Maternal Aunt and Uncle, as they are with Mother. The children had significant dental issues when they were placed in temporary custody of ACDJFS. Maternal Aunt and Uncle addressed those dental issues. One child demonstrated different learning abilities, which Maternal Aunt and Uncle addressed. After the children were placed back with Mother in January 2017, Mother exposed the children to criminal activity and allowed the children contact with her brother, a convicted sex offender. Mother provides care for her ailing father without support, and her duties prevent her from working. In this case, the record supports the trial court's conclusion that it would be in the best interest of the children to be placed in the legal custody of Maternal Aunt and Uncle.

{¶37} Mother's first Assignment of Error is overruled.

## II. REASONABLE EFFORTS

{¶38} Mother contends in her second Assignment of Error that the trial court erred in granting legal custody to Maternal Aunt and Uncle when ACDJFS did not make reasonable efforts to prevent the continued removal of the children from the home. In her third Assignment of Error, Mother contends ACDJFS did not make reasonable efforts towards reunification of the children and Mother.

{¶39} R.C. 2151.419(A)(1) states, "* * * at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * that filed the complaint in the case, removed the child from home, has custody of the child, * * * has made reasonable efforts to prevent the removal

of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. * * * In determining whether reasonable efforts were made, the child's health and safety shall be paramount."

{¶40} In its April 5, 2018 judgment entry overruling Mother's objections, the trial court initially agreed with Mother that ACDJFS did not make reasonable efforts to keep the children in Mother's home or prevent removal from the home after February 28, 2017, when ACDJFS removed the children from Mother's home because brother, a convicted sex offender, was found to be present in the home. After February 28, 2017, the trial court found ACDJFS expressed to Mother that reunification was no longer the goal, although ACDJFS added a parenting class to Mother's case plan after the February 28, 2017 incident. The trial court determined, however, it must review the entire history of the case, not just the February 28, 2017 matter, to determine whether ACDJFS made reasonable efforts.

{¶41} An examination of Mother's case plan found ACDJFS correctly identified the issues that Mother needed to address and provided services Mother needed to utilize for the children to return home safely. The trial court found that up until February 28, 2017, ACDJFS did make reasonable efforts to prevent the continued removal of the children and to finalize a permanency plan with the goal of reunification.

{¶42} The evidence in this case supports the trial court's decision that ACDJFS made reasonable efforts towards reunification. Mother had regular contact with the children, she completed most of her case plan, and she eventually progressed to placement of the children in her home. Once the children were placed with Mother,

however, two activities occurred that required removal of the children. While there was conflicting evidence whether Mother's brother was living in the father's home while the children were present, there was no dispute that the brother was present while the children were in the home. There was also no dispute that Mother was convicted of Petty Theft after the children were placed back in her home. The health and safety of the children are paramount in determining whether ACDJFS made reasonable efforts.

{¶43}  Mother's second and third Assignments of Error are overruled.

## CONCLUSION

{¶44} The judgment of the Ashland County Court of Common Pleas, Juvenile Division, is affirmed.

By:  Delaney, J.,

Wise, John, P.J. and

Wise, Earle, J., concur.