[Cite as *State v. Flickinger*, 2021-Ohio-3261.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                         |   | JUDGES:                       |
|-------------------------|---|-------------------------------|
| STATE OF OHIO           | : | Hon. Craig R. Baldwin, P.J.   |
|                         | : | Hon. W. Scott Gwin, J.        |
| Plaintiff-Appellee      | : | Hon. Earle E. Wise, J.        |
|                         | : |                               |
| -vs-                    | : |                               |
|                         | : | Case No. 2021 AP 01 0003      |
| ERIC FLICKINGER         | : |                               |
|                         | : |                               |
| Defendant-Appellant     | : | OPINION                       |


CHARACTER OF PROCEEDING:     Criminal appeal from the Tuscarawas
                             County Court of Common Pleas, Case No.
                             2019 CR 10 0438

JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      September 17, 2021


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

KRISTINE BEARD                        DAN GUINN
Assistant Prosecutng Attorney         232 West 3d Street, Suite 312
125 E. High Avenue                    Dover, OH 44622
New Philadelphia, OH 44663

*Gwin, J.,*

{¶1} Appellant Eric Flickinger appeals from the December 17, 2020 judgment entry of the Tuscarawas County Court of Common Pleas. Appellee is the State of Ohio.

*Facts & Procedural History*

{¶2} On October 28, 2019, appellant was charged with two counts of burglary, each in violation of R.C. 2911.12(A)(2) and (D), felonies of the second degree, and one count of theft, in violation of R.C. 2913.02(A)(1) and (B)(2), a felony of the fifth degree. Appellant's co-defendant, Misty Neff ("Neff"), was similarly charged and pled guilty.

{¶3} The trial court held a jury trial beginning on September 9, 2020.

{¶4} Officer James Miller ("Miller") of the New Philadelphia Police Department responded to a call on Hilltop and Countryside roads on October 10, 2018. He located Neff sitting at the bottom of the yard of Marty and Shirley Kamban with a pile of luggage, a wheelbarrow with property inside of it, and miscellaneous items hidden underneath tree branches and leaves. Miller knew Neff because he had dealt with her numerous times in the past. Neff told Miller she didn't know why the property was there, and that she was waiting for appellant. Another officer completed the process of searching Neff; while this was going on, Miller saw appellant running from the direction of the Kambans' house. Miller and Officer Boyd engaged in a foot chase and caught appellant on Wabash Avenue.

{¶5} Miller testified he did not actually see appellant come out of the house, but he saw appellant running from the direction of the house. When Miller caught up to him, he determined it was appellant. The person he saw running from the home was the same person he apprehended wearing the same clothes. Miller did not find any stolen property on appellant.

{¶6}   Miller identified numerous photographs of the items he located in the piles. Miller testified the tracts from the wheelbarrow led directly up the hill to Mr. Kennedy's house.  When Miller followed the wheelbarrow tracks, he discovered there was a window in Mr. Kennedy's garage that was pried open.

{¶7}   Miller did not see if appellant threw anything during the chase, but on his way back from detaining appellant, Miller located a phone card with Shirley Kamban's name on it on the ground.  Before Miller took appellant to the station, Alexis Kamban came down the hill and realized there was property from her parents' house in the piles. She accused appellant of taking the property.  She said appellant had been in the house that morning and, upon further investigation, the basement window was open and the basement was ransacked.

{¶8}   Officer Andrew Boyd ("Boyd") is a police officer for the City of New Philadelphia who responded to a phone call regarding suspicious behavior on Hilltop Road, in the area of Countryside Road.  When Boyd got out of the car, he followed the subject leaving the scene.  Boyd identified appellant as the person he apprehended. Boyd picked up a card with Shirley Kamban's name on it on his way down the hill to apprehend appellant. Boyd identified several photographs of the items he located hiding in the woods.

{¶9}   Boyd confirmed that the Kambans' acknowledged appellant was in their house that morning with their daughter in the downstairs bedroom.

{¶10}  Lisa Ferris ("Ferris") lives on Countryside Road in New Philadelphia.  On October 10, 2018, between 1:00 p.m. and 2:00 p.m., Ferris saw a man wandering around the foot of her driveway carrying a bag.  He continued to wander around with a woman,

walking back and forth up and down the hill to and from the Kennedy and Kamban houses. Ferris saw piles of items on the hillside. Ferris called the police. Ferris identified several photographs that she took of the man and woman in the road that day while she was waiting for the police.

{¶11} Ferris did not know the man in the photographs she took. She was approximately one hundred yards away from the man.

{¶12} Donald Kennedy ("Kennedy") lives on Hilltop Road. Marty and Shirley Kamban are his next-door neighbors to the south of his property. The police asked him to come to the scene to see if he could identify any items. At the scene, he saw a wheelbarrow and other items from his garage, including an insulated cooler, a sound bar, a battery charger, a hand sander, some jumper cables, and an electric drill. Kennedy also noticed the screen was out of his garage window. Kennedy did not give anyone permission to take any of these items out of his garage. Kennedy does not know appellant, and does not know who came into his home and took the items.

{¶13} Marty Kamban lives on Hilltop Road. When Marty entered his home on October 10, 2018, he noticed his diabetic medicine was missing. He noticed multiple other items missing from his home, including: keys to his rental properties, a leaf blower, tools, clothes, and electrical items. Later that day, Marty and Mr. Kennedy used a pickup truck to recover the stolen items, which had been located in the woods and at the bottom of the hill. Marty stated the person who took the items appeared to have entered and exited from a basement window that leads to the woods.

{¶14} On cross-examination, Marty stated his daughter invited appellant into his house occasionally prior to October 10th, but appellant was not permitted into his home

after some items were stolen in the weeks prior to October 10th. Marty did not see appellant that day.

{¶15} Shirley Kamban noticed several items missing from her car, including a gift card. She was asleep on October 10th when the police came, so she did not know who came into the house that day.

{¶16} The jury found appellant not guilty of the two counts of burglary, and guilty of one count of theft. The jury additionally found the value of the property involved was $1,000 or more and less than $7,500. The trial court memorialized the jury's verdict in a September 15, 2020 judgment entry. The trial court ordered a pre-sentence investigation, and set sentencing for October 28, 2020.

{¶17} Appellant failed to report to probation for a PSI interview and failed to return the probation officer's call. The trial court thus set a review hearing for October 21, 2021, and ordered appellant to appear. Appellant failed to appear for the October 21st review hearing. The trial court issued a capias for appellant's arrest.

{¶18} Appellant was arrested on October 26, 2020. The trial court sentenced appellant on December 15, 2020, and issued a judgment entry of sentence on December 17, 2020. The trial court imposed a sentence of 120 days in jail with 74 days of jail time credit.

{¶19} Appellant appeals the December 17, 2020 judgment entry of the Tuscarawas County Court of Common Pleas and assigns the following as error:

{¶20} "APPELLANT'S CONVICTION FOR THEFT WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I.

{¶21} Appellant contends his conviction was against the manifest weight and sufficiency of the evidence.

{¶22} The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), in which the Ohio Supreme Court held, "an appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶23} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶24} It is well-established, though, that the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95

Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216.  The jury is free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility.  *Id.*

{¶25} Appellant was found guilty of one count of theft pursuant to R.C. 2913.02(A)(1) and (B)(2), which provide, in pertinent part:

(A) No person, with purpose to deprive the owner of property or services,

shall knowingly obtain or exert control over either the property or services

in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent.

* * *

(B)(2) * * * If the value of the property or services stolen is one thousand dollars or

more and is less than seven thousand five hundred dollars * * * a violation of this

section is theft, a felony of the fifth degree.

{¶26}  Appellant first contends since the jury found him not guilty of the burglary charges, the jury could not find him guilty of theft; thus, the theft conviction is against the manifest weight of the evidence.  We disagree.

{¶27}  "Inconsistent verdicts on different counts of a multi-count indictment do not justify overturning a verdict."  *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047.  We have previously cited the Ohio Supreme Court's decision in *State v. Lovejoy*, 79 Ohio St.3d 440, 683 N.E.2d 1112 (1997), holding that, "the several counts of an indictment containing more than one count are not interdependent, and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count."  "An inconsistent verdict may very well be the result of leniency and compromise by the jurors, rather than being

caused by jury confusion." *State v. Fraley*, 5th Dist. Perry No. 03CA12, 2004-Ohio-4989; *State v. Carson*, 5th Dist. Licking No. 18-CA-25, 2018-Ohio-5303.

{¶28} Because appellant's argument is that the jury's verdicts were inconsistent across multiple counts rather than within a single count, based on the law as set forth above, we cannot justify overturning the jury verdict. *See State v. Rardon*, 5th Dist. Delaware No. 17 CAA 04 0027, 2018-Ohio-1935. The jury could reasonably find the evidence supported the theft conviction, but also find the evidence did not reasonably support convictions on the burglary counts.

{¶29} Appellant next argues the evidence presented was insufficient for the jury to identify him as the person who committed the theft offense.

{¶30} Every criminal prosecution requires proof that the person accused of the crime is the person who committed the crime. *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888. This truism is reflected in the state's constitutional burden to prove the guilt of the "accused" beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Like any fact, the state can prove the identity of the accused by circumstantial or direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). A witness need not physically point out the defendant in the courtroom as long as there is sufficient direct or circumstantial evidence proving that the defendant was the perpetrator. *Id.*

{¶31} If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *Id.* The relevant question in a sufficiency-of-the-evidence review is whether, after viewing the evidence in

a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶32} In this case, Ferris took a cell phone photograph of a man carrying a bag containing what was later determined to be stolen property. The same man was also in a cell phone photograph with Neff, who was well-known to Miller. Ferris testified she saw this same man and woman wander up and down the hill, carrying household items and covering the items with branches in the woods.

{¶33} Miller saw appellant running from the direction of the victims' house. Miller and Boyd engaged in a foot chase and caught appellant on Wabash Avenue. When Miller caught up to him, he determined it was appellant. The person he saw running from the home was the same person he apprehended and was wearing the same clothes. Miller confirmed the man in Ferris' photograph was appellant, the man they apprehended. Boyd identified a stolen credit card with Shirley Kamban's name on it in the path of appellant's flight. On his way back from detaining appellant, Miller located a phone card with Shirley Kamban's name on it. During his investigation, Miller determined the tracts from the wheelbarrow led directly up the hill to Mr. Kennedy's house. When he followed the wheelbarrow tracts, he discovered there was a window in Mr. Kennedy's garage that was pried open.

{¶34} We find the evidence presented was sufficient for the jury to identify appellant as the person who committed the theft offense beyond a reasonable doubt.

{¶35} Appellant contends the testimony of Marty Kamban as to whether he saw appellant on the morning of October 10, 2018 was contradictory and brings his credibility

into question; thus, his conviction is against the manifest weight of the evidence.  We disagree.

{¶36}  The jury, as the trier of fact, was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility.  "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render [a] defendant's conviction against the manifest weight of the evidence."  *State v. Johnson*, 5th Dist. Stark No. 2014CA00189, 2015-Ohio-3113, citing *State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996).  The jury need not believe all of a witness's testimony, but may accept only portions of it as true.  *Id.*

{¶37}  Appellant contends since there was no property found on him at the time of his arrest, his theft conviction is against the manifest weight of the evidence.  We disagree.

{¶38}  The fact that appellant was not in possession of the property when he was arrested is not determinative of whether he exerted control over it without the owners' consent.  *State v. Fornash,* 5th Dist. Stark No. 2019CA00145, 2020-Ohio-3265; *State v. Brownlee*, 9th Dist. Summit No. 27255, 2015-Ohio-2616 (upholding theft conviction when appellant stood 15-20 feet from the stolen merchandise in the cart); *State v. McKinney*, 11th Dist. Lake No. 2006-L-169, 2007-Ohio-3389 (stating, "that appellant did not physically carry the merchandise is immaterial, as the state presented sufficient evidence from which the jury could find that appellant exerted control over the stolen merchandise").

{¶39} In this case, appellee presented sufficient evidence from which the jury could find that appellant exerted control over the stolen items. Ferris saw the man she took the photograph of taking household items up and down the hill, and hiding them in the woods. When appellant was apprehended, he was positively identified as the man in Ferris' photographs. There were cards with Shirley Kamban's name on them in the path of appellant's flight. Neff told officers she was waiting for appellant to come down from the victims' house. The weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216.

{¶40} Finally, appellant contends there was no evidence presented to establish the value of the stolen property was more than $1,000, but less than $7,500, and thus his conviction is against the manifest weight of the evidence.

{¶41} R.C. 2913.61 establishes how the value of property is to be determined. It states, in pertinent part:

(D) The following criteria shall be used in determining the value of property

or services involved in a theft offense:

 (2) The value of personal effects and household goods, and of materials,

supplies, equipment, and fixtures used in the profession, business, trade,

occupation, or avocation of its owner, which property is not covered under

division (D)(1) of this section and which retains substantial utility for its

purpose regardless of its age or condition, is the cost of replacing the

property with new property of like kind and quality.

(3) The value of any real or personal property that is not covered under division (D)(1) or (2) of this section, and the value of services, is the fair market value of the property or services. As used in this section, "fair market value" is the money consideration that a buyer would give and a seller would accept for property or services, assuming that the buyer is willing to buy and the seller is willing to sell, that both are fully informed as to all facts material to the transaction, and that neither is under any compulsion to act.

{¶42} "To establish value in theft offenses, the state need not prove value to an exact amount. Rather, all that is required is that some evidence be admitted to establish value." *State v. Pesec*, 11th Dist. Portage No. 2006-P-0084, 2007-Ohio-3846. Moreover, "[a]n owner of personal property is qualified to given an opinion as to the value of personal property." *Id.*, citing *Bishop v. East Ohio Gas*, 143 Ohio St. 541 (1944). Circumstantial evidence, including photographs of personal property, may be used to prove the value of stolen items in a theft offense. *Id.*; *State v. Jennings*, 8th Dist. Cuyahoga No. 99631, 2013-Ohio-5428; *State v. Jones*, 5th Dist. Tuscarawas No. 2002-AP-05-0041, 2003-Ohio-445; *State v. Allen*, 5th Dist. Stark No. 2002CA00059, 2003-Ohio-229.

{¶43} This case involved the theft of common household items. Kennedy and Kamban testified to and identified what specific items were missing or taken from their homes. Appellee introduced multiple photographs of the items that had been taken from the homes, including bags of clothing, small tools, yard equipment, personal items, cash, and power tools. The jurors also heard testimony about items that had been taken and never recovered, such as diabetic medicine, money, and a passport. This evidence was sufficient, in a light most favorable to the state, for the jurors to conclude beyond a

reasonable doubt that the aggregate value of the stolen property was more than $1,000 but less than $7,500. The verdict forms required the jurors to consider different values, including a value less than $1,000, in reaching their decision.

{¶44} After weighing the evidence and evaluating the credibility of the witnesses, with appropriate deference to the trier of fact's credibility determination, we cannot say the jury clearly lost its way and created a manifest miscarriage of justice with regard to the theft.

{¶45} Similarly, we find that sufficient evidence exists to support appellant's conviction. This is not the case where the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered.

{¶46} Upon our review of the entire record, we find appellant's theft conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Appellant's assignment of error is overruled.

{¶47} The December 17, 2020 judgment entry of the Tuscarawas County Court of Common Pleas is affirmed.

By Gwin, J.,

Baldwin, P.J., and

Wise, Earle, J., concur