[Cite as *State v. Anderson*, 2026-Ohio-1609.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br><br>       Plaintiff-Appellee,<br><br>- vs -<br><br>DAVID G. ANDERSON,<br><br>       Defendant-Appellant. | CASE NO. 2025-L-098<br><br><br>Criminal Appeal from the<br>Court of Common Pleas<br><br><br>Trial Court No. 2025 CR 000159 |

## OPINION AND JUDGMENT ENTRY

Decided: May 4, 2026
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee* and *Alexandra E. Kutz*, Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Eric M. Levy*, The Law Office of Schlachet and Levy, Terminal Tower, Suite 2200, 50 Public Square, Cleveland, OH 44113 (For Defendant-Appellant).

EUGENE A. LUCCI, J.

{¶1} Appellant, David G. Anderson, appeals his convictions for forgery and theft following a jury trial. We affirm.

{¶2} On July 13, 2024, Anderson presented a cashier's check for cashing at CheckSmart in Willoughby, Ohio, where he maintained accounts. The check was made payable to Anderson from Gesa Credit Union. CheckSmart cashed the check, providing Anderson with the funds less a five percent check-cashing fee, pursuant to the terms of its customer agreement with Anderson. After CheckSmart deposited the check in its account with Wells Fargo Bank, the check was returned unpaid and marked "Not

Authorized." Thereafter, CheckSmart informed Anderson that he was required to repay the funds. Throughout July and August, Anderson informed CheckSmart employees that he intended to repay the money; however, he failed to do so. On August 23, 2024, CheckSmart filed a police report with the Willoughby Police Department and ceased contacting Anderson.

{¶3} In 2025, the Lake County Grand Jury issued an indictment charging Anderson with passing bad checks, a fifth-degree felony, in violation of R.C. 2913.11(B); forgery, a fifth-degree felony, in violation of R.C. 2913.31(A)(3); theft, a fifth-degree felony, in violation of R.C. 2913.02(A)(2); and theft, a fifth-degree felony, in violation of R.C. 2913.02(A)(3) ("theft by deception"). Aside from the forgery charge, all other counts specified that the value of the property involved was $1,000 or more but less than $7,500.

{¶4} Anderson pleaded not guilty to the charges. Thereafter, the State filed a notice of intent to use Evid.R. 404(B) evidence and moved the court to allow such evidence. The evidence pertained to Anderson, prior to cashing the check at issue here, depositing a check in an account at PNC Bank that was returned unpaid. The trial court preliminarily granted the motion.

{¶5} Thereafter, the case proceeded to a jury trial. The jury found Anderson guilty on all counts. The court referred the matter to the probation department for a victim impact statement and set the matter for sentencing.

{¶6} At sentencing, the parties agreed that the passing bad checks and forgery counts merged, and they agreed that the two theft counts merged. The State elected to proceed to sentencing on the counts of forgery and theft by deception. The court sentenced Anderson to nine months of incarceration on each of these two counts, to be

Case No. 2025-L-098

served concurrently with each other, but consecutively to a sentence imposed in a separate case. Further, the court ordered Anderson to pay $4,950 in restitution to CheckSmart.

{¶7} In his first and second assigned errors, Anderson argues:

[1.] The State failed to present sufficient evidence to support the convictions for forgery (count 2) and theft by deception (count 4), and the trial court erred in denying appellant's Crim.R. 29 motion for acquittal.

[2.] Appellant's convictions for forgery (count 2) and theft by deception (count 4) are against the manifest weight of the evidence.

{¶8} Crim.R. 29(A) provides, in relevant part, "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." The question of whether sufficient evidence supports a conviction "is a test of adequacy," which we review de novo. *State v. Thompkins*, 1997-Ohio-52, ¶ 23. In conducting this review, we consider the evidence in a light most favorable to the prosecution and determine if "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶9} Unlike the standard for the sufficiency of the evidence, the "[w]eight of the evidence concerns 'the inclination of the *greater amount of credible evidence* . . . to support one side of the issue rather than the other.'" (Emphasis in original.) *Thompkins* at ¶ 24, quoting *Black's Law Dictionary* (6th Ed. 1990). When considering challenges to the weight of the evidence, an appellate court reviews "'the entire record, weighs the

Case No. 2025-L-098

evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact-finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at ¶ 25, quoting *Martin* at 175.

{¶10} Thus, a conclusion that a conviction is supported by the weight of the evidence necessarily includes a determination that the State produced sufficient evidence in support of the conviction. *State v. DiBiase*, 2012-Ohio-6125, ¶ 38 (11th Dist.); *State v. Pesec*, 2007-Ohio-3846, ¶ 44 (11th Dist.).

{¶11} Here, Anderson was convicted of forgery, in violation of R.C. 2913.31(A)(3), and theft by deception, in violation of R.C. 2913.02(A)(3). With respect to the forgery conviction, R.C. 2913.31(A)(3) provides, "No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall . . . [u]tter, or possess with purpose to utter, any writing that the person knows to have been forged." "'Utter' means to issue, publish, transfer, use, put or send into circulation, deliver, or display." R.C. 2913.01.

{¶12} With respect to the theft by deception conviction, R.C. 2913.02(A)(3) provides, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services . . . [b]y deception. . . ."

> "Deception" means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct,

Case No. 2025-L-098

act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.

R.C. 2913.01(A).

{¶13} With respect to both charges at issue, R.C. 2901.22(A) and (B) provide:

(A) A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

(B) A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶14} Here, in support of the charges, at trial, the State presented the testimony of CheckSmart, Wells Fargo Bank, and PNC Bank employees, as well as a Willoughby police officer. The evidence established that Anderson maintained personal and business accounts with CheckSmart, also known as "Community Choice Financial" and "Buckeye Check Cashing." Anderson operated his own business as a contractor. On July 13, 2024, Anderson presented a cashier's check to a customer service representative at CheckSmart in Willoughby for cashing. The cashier's check was marked as payable to Anderson in the amount of $4,500 from Gesa Credit Union. On the cashier's check, where bank/credit union employees would sign as "authorized signatures," appeared the names

Day Miller and Demetrius Maquel. Nothing on the face of the check caused the CheckSmart customer service representative any suspicions about its legitimacy.

{¶15} The customer service representative was familiar with Anderson because she had recently cashed his business checks. When Anderson presented the check at issue here, he informed the representative that he received the check for payment on contracting work he had performed. Although CheckSmart employees would typically take certain precautions, such as performing Google searches, to verify the validity of a check prior to cashing, they did not do so for contractors' checks. Accordingly, Anderson endorsed the check, and the representative provided him with $4,275 in cash, representing the amount of the check less a five percent fee, which was deducted pursuant to Anderson's customer agreement. CheckSmart deposited the cashier's check in its account with Wells Fargo.

{¶16} The following Friday, July 19, 2024, the CheckSmart customer service representative learned that the Gesa Credit Union check was returned unpaid, marked "Not Authorized." CheckSmart employees then began contacting Anderson for repayment. These calls included a call from a collector for CheckSmart who informed Anderson that the check appeared to be counterfeit. The collector had reached this conclusion because of the "Not Authorized" notation on the returned check. Anderson did not dispute that the check was counterfeit and promised to repay the amount. On July 22, 2024, CheckSmart sent Anderson a demand letter informing him that a police report would be filed if he did not repay CheckSmart within ten days. Anderson continued to promise to repay CheckSmart. On August 5th, the CheckSmart collector contacted Gesa Credit Union, which confirmed that the check was counterfeit, as the account and routing

Case No. 2025-L-098

numbers were incorrect. On August 23, 2024, when Anderson had failed to pay as promised, CheckSmart filed a police report and ceased contacting Anderson.

{¶17} The CheckSmart employees who testified confirmed that the Gesa Credit Union check did not appear on its face to be invalid. They further verified that Anderson had provided CheckSmart with his correct contact information and identification when he opened his accounts.

{¶18} In support of the State's position that Anderson knew of the counterfeit nature of the check, the State presented the testimony of a loss prevention advisor/auditor at PNC Bank, where Anderson also maintains an account. On July 1, 2025, Anderson deposited a cashier's check from Trustmark in his PNC Bank account. The remitter on the check is listed as Demetrius Maquel. On this check, there were two signature lines for authorized signatures from the bank (Trustmark), and one signature, which appears to be "Oprah Winfrey" is the only signature on the authorized signature lines. PNC Bank initially credited the check amount to Anderson's account when he deposited it. However, the check was returned unpaid for the reason of being "altered, fictitious," resulting in an overdraw. The bank notified Anderson by mail of the unpaid check with a copy of the returned check. The bank was unable to collect the funds from Anderson and charged off the account on July 15, 2024, sending him a letter regarding the charge-off, loss, and closing of the account.

{¶19} Two witnesses verified that a PNC branch is located on the same street as CheckSmart, within walking distance.

Case No. 2025-L-098

{¶20} Following the State's case, defense counsel moved for acquittal pursuant to Crim.R. 29. The trial court overruled the motion. The defense thereafter rested without putting on evidence and renewed its Crim.R. 29 motion, which the court again overruled.

{¶21} On appeal, Anderson argues that the State failed to produce sufficient evidence that he had knowledge of the counterfeit nature of the check and his convictions were against the weight of the evidence. In support, Anderson maintains that there existed no direct proof of his knowledge that the Gesa Credit Union check was counterfeit, and each of the CheckSmart witnesses indicated that the check appeared legitimate on its face. Anderson maintains that his actions were open and consistent with his past transactions, that he informed CheckSmart that he received the check for contractor work, and that he promised to repay the debt when the check was returned unpaid. These actions, he maintains, militate against his knowledge that the check was counterfeit. Similarly, with respect to the theft by deception conviction, Anderson argues that the evidence does not support that he exerted control over CheckSmart's property by deception.

{¶22} However, as set forth above, Anderson did not dispute that the check was counterfeit when CheckSmart advised him of this. Further, just prior to cashing the Gesa Credit Union check with an authorized signature of Demetrius Maquel, Anderson had deposited a Trustmark cashier's check bearing the name Demetrius Maquel as the remitter in his PNC account. PNC informed him that the Trustmark check was counterfeit. It can be reasonably inferred that Anderson was aware of the counterfeit nature of the Gesa Credit Union check when he presented it for cashing at CheckSmart. This is not the extraordinary case where the evidence weighs heavily against Anderson's convictions.

Case No. 2025-L-098

Therefore, Anderson's convictions are not against the weight of the evidence and are, thus, necessarily supported by sufficient evidence.

{¶23} Based on the foregoing, Anderson's first and second assigned errors lack merit.

{¶24} In his third assigned error, Anderson contends:

> The trial court abused its discretion by admitting "other acts" evidence regarding an unrelated, uncharged checking account incident and improper opinion testimony regarding appellant's state of mind, in violation of Evid.R. 404(b), 403(a), and 701, thereby depriving appellant of a fair trial.

{¶25} The admission or exclusion of evidence generally lies within the broad discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. *See also State v. Morris*, 2012-Ohio-2407, ¶ 14. Accordingly, a trial court's decision to admit relevant evidence will not be reversed absent an abuse of discretion. *Id.* An "abuse of discretion" connotes "'judgment exercised by a court which neither comports with reason, nor the record.'" *State v. Marcellino*, 2019-Ohio-4837, ¶ 23 (11th Dist.), quoting *State v. Flanagan*, 2015-Ohio-5528, ¶ 42 (11th Dist.), citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925).

{¶26} Pursuant to Evid.R. 404(B)(1), "Evidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid.R. 404(B)(2). However, even if evidence of other acts is admissible for a permitted purpose under Evid.R. 404(B)(2), it may still be inadmissible under Evid.R. 403(A), which provides

Case No. 2025-L-098

that "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶27} Therefore, the Supreme Court of Ohio has held:

> [I]n considering other acts evidence, trial courts should conduct a three-step analysis.
>
> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403.

*State v. Williams*, 2012-Ohio-5695, ¶ 19-20. "The court is precluded from admitting improper character evidence under Evid.R. 404(B), but it has discretion to allow other-acts evidence that is admissible for a permissible purpose." (Citations omitted.) *State v. Graham*, 2020-Ohio-6700, ¶ 72.

{¶28} As addressed in our discussion of the first and second assigned errors, a PNC Bank employee testified that, approximately two weeks before Anderson cashed the Gesa Credit Union check, Anderson had deposited a counterfeit Trustmark cashier's check in his account at PNC Bank. When the bank discovered that the check was counterfeit, it notified Anderson. When Anderson did not correct the resulting overdraw in his account, PNC Bank closed the account on July 15, 2024.

Case No. 2025-L-098

{¶29} Anderson maintains that this evidence should have been excluded as impermissible character evidence or because of the highly prejudicial nature of the evidence.

{¶30} However, this evidence was presented to demonstrate that Anderson knew that the Gesa Credit Union check was counterfeit, as each of the cashier's checks bore the name of Demetrius Marquel, and they were presented to financial institutions within a short period of time.

{¶31} Further, the trial court instructed the jury:

> Evidence was received about the commission of acts other than the offenses with which the defendant is charged in this trial, specifically evidence of a check that was dishonored at PNC Bank. That evidence was received only for the limited purpose of proving motive, intent, knowledge, or absence of mistake or accident.
>
> Motive. You may consider evidence of other acts that shows motive or other act evidence that establishes that the accused had a specific reason to commit the offenses charged in this case.
>
> Intent. You may, but are not required to infer from the evidence of other acts by the defendant that it is more probable than not that the defendant intended to commit the offenses charged in this case. The question is whether, under the circumstances, the detailed facts of the charged offenses and uncharged conduct or other acts strongly suggests that an innocent explanation is not plausible.
>
> Knowledge. You may consider evidence of other acts to determine whether it shows that the defendant had knowledge that the check would be dishonored and/or had been forged.
>
> Absence of Mistake or Accident. You may consider evidence of other acts to determine whether it negated the defendant's claim of mistake or accident with respect to the commission of the alleged offenses. You may consider whether such evidence tended to show by similar acts or incidents, that the

act in question was not performed inadvertently, accidentally, involuntarily, or without guilty knowledge.

The evidence about the commission of acts other than the offenses with which the defendant is charged in this trial cannot be considered for any other purposes than the purposes identified. It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in conformity or accordance with that character. It does not follow from the defendant's past acts that he committed the particular crimes charged in this case. The State has the burden of proving each element of the particular crimes currently at trial beyond a reasonable doubt. The State cannot satisfy its burden merely by implying that the defendant committed these crimes because his other acts suggest a propensity to commit crimes.

{¶32} *See State v. Whitaker*, 2022-Ohio-2840, ¶ 161 (jury is presumed to follow the court's instructions); *State v. Hartman*, 2020-Ohio-4440, ¶ 70 ("when a court issues a limiting instruction with respect to other-acts evidence, the instruction should be tailored to the facts of the case").

{¶33} Because the evidence regarding the Trustmark check deposited at PNC Bank was admitted for the permitted purpose of proving Anderson's knowledge of the counterfeit nature of the Gesa Credit Union check, its admission does not run afoul of Evid.R. 404(B). Further, given the probative nature of the circumstances surrounding the returned Trustmark check as it pertains to Anderson's knowledge, we cannot say that the trial court abused its discretion in admitting the evidence.

{¶34} Anderson further contends that the court erred in admitting testimony of CheckSmart's customer service representative regarding her awareness of the Trustmark check that was returned unpaid to PNC Bank, as her testimony in this regard constituted improper lay opinion testimony as to Anderson's state of mind.

{¶35} A lay witness may testify in the form of opinion or inferences only "when those opinions or inferences . . . are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue." Evid.R. 701.

{¶36} During cross-examination of the CheckSmart customer service representative that cashed the Gesa Credit Union check, the following exchange occurred:

> Q. Do you have any information at your disposal to support the proposition that Mr. Anderson wasn't duped by this [Gesa Credit Union] cashier's check?
>
> [THE STATE]: Objection.
>
> THE COURT: Overruled.
>
> A. No.

{¶37} Thereafter, on redirect examination, the following exchange occurred:

> Q. [Customer service representative], besides this check that Mr. Anderson brought to CheckSmart, are you aware of another check that Mr. Anderson presented to a bank that did not clear?
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Overruled.
>
> A. I have been recently aware that he has another returned check at another bank.

{¶38} Although the testimony on redirect examination was elicited to refute the proposition that Anderson was "duped" by the Gesa Credit Union check, the customer service representative offered no opinion on this issue, and it remained in the province of the jury to determine Anderson's state of mind.

Case No. 2025-L-098

{¶39} Accordingly, Anderson's third assigned error lacks merit.

{¶40} In his fourth assigned error, Anderson maintains:

> Appellant was denied his right to a fair trial due to prosecutorial misconduct during rebuttal closing argument when the prosecutor argued facts not in evidence.

{¶41} "We review allegations of prosecutorial misconduct during closing arguments by asking 'whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" *State v. McAlpin*, 2022-Ohio-1567, ¶ 156 quoting *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "'Prosecutors are entitled to latitude as to what the evidence has shown and what inferences can be drawn from the evidence.'" *McAlpin* at ¶ 180, quoting *State v. Diar*, 2008-Ohio-6266, ¶ 213. However, "[n]either the defense nor the prosecution may refer to evidence that is not in the record." *State v. McKelton*, 2016-Ohio-5735, ¶ 286, quoting *State v. Brown*, 38 Ohio St.3d 305, 316, fn. 7 (1988).

{¶42} Here, Anderson maintains that the State asserted facts that were not in evidence during closing argument when the prosecutor referred to a policy of PNC precluding the immediate cashing of checks. Anderson maintains that he was prejudiced by the prosecution's inference that he chose to pay a fee to cash the Gesa Credit Union check at CheckSmart so that he could obtain payment on the fraudulent check immediately. Whereas, if he had presented the check to PNC, it would not have immediately cashed the check.

{¶43} On this issue, we agree that the testimony did not include a "policy" of PNC Bank to not provide immediate cash for a cashier's check. Instead, the PNC Bank loss

prevention advisor testified on cross-examination as to the procedure followed when a customer presents a cashier's check at PNC Bank:

A. We complete a deposit ticket -- well, the teller would complete a deposit ticket and run that through our system.

Q. What does that mean, run it through the system?

A. That means process the deposit by running it through the computer. It will take a copy of the check, a copy of the deposit ticket, and then give them credit.

Q. Okay. What I'm getting at, teller looked at this check, didn't see anything wrong with it, and processed it?

A. Correct.

Q. Based on what you're saying?

A. Correct.

{¶44}  On redirect examination, the following exchange occurred:

Q. And if the customer doesn't have the full amount in their account, they would not get the full amount of the check at the time of deposit?

[DEFENSE COUNSEL]: Objection.

THE COURT: Sustained.

Q. When Mr. Anderson deposited that check for $4,760, would he have been given that full amount of money when he deposited it?

A. No, not the same day.

{¶45}  Although we agree with Anderson that there was no testimony specifically indicating a policy of PNC regarding cashing checks, the State did not argue there was such a policy. Instead, during closing argument, the State maintained:

So you know about the check before, that it went to PNC Bank, then you also have this check, the Gesa Credit Union

Case No. 2025-L-098

check, which has two authorized signatures, one of those being Demetrius Maquel. And you know from what cashier's checks are that that means the authorized signatures are the people that work for the bank. So first we have him getting a check, that Trustmark check where he is the remitter, the person purchasing it, now you have one where he's a bank employee, and this check is out of the state of Washington. You know the defendant had a PNC Bank checking account, business checking account, but he didn't take this check there. You know there is a PNC Bank branch watching (sic.) distance right near the CheckSmart, across the street just down a short amount, but he chose to go to CheckSmart. PNC Bank wouldn't have given him cash. They wouldn't have --

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

[THE STATE]: PNC Bank would not have given him cash when he brought the check in. CheckSmart would give you cash. CheckSmart takes a fee. PNC Bank would not have taken $225 to deposit the check in the PNC Bank. You go to PNC Bank, you get nothing when you walk out. You go to CheckSmart and you get over $4,000 in your hand at that moment.

Mr. Anderson knew the check would be dishonored, not paid out, so he made sure to get cash. Even after paying the fee, he walked away with over $4,000 in cash and he never paid CheckSmart back, because it wasn't a mistake.

{¶46} The prosecutor's express inference that Anderson chose to cash the check at CheckSmart instead of PNC Bank because he was aware that he would obtain immediate funds at the former, but not the latter, is reasonably supported by the evidence.

{¶47} Further, the trial court instructed the jury that "[t]he evidence does not include the indictment, opening statements, or closing arguments. The opening statements and closing arguments are designed to assist you. They are not evidence."

{¶48} Based on the foregoing, Anderson has not demonstrated that the trial court erred in overruling his objection to the State's argument on this point, and, thus, his fourth assigned error lacks merit.

{¶49} In his fifth assigned error, Anderson argues:

> The sentence imposed upon appellant is clearly and convincingly contrary to law because the trial court failed to merge counts two and four; and excessive restitution was improperly imposed.

{¶50} R.C. 2941.25 governs the merger of allied offenses of similar import and provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶51} "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import." *State v. Ruff*, 2015-Ohio-995, paragraph one of the syllabus. "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at paragraph two of the syllabus. "Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses

were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Ruff* at paragraph three of the syllabus.

{¶52} Here, Anderson did not challenge the trial court's failure to merge the forgery and theft counts at trial.

{¶53} Generally, where an appellant fails to bring an error to the attention of the trial court, he forfeits the issue except as to plain error on appeal. *State v. Bailey*, 2022-Ohio-4407, ¶ 8, citing *State v. Rogers*, 2015-Ohio-2459, ¶ 28 ("the failure to raise the allied offense issue at the time of sentencing forfeits all but plain error"). "Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice." *Bailey* at ¶ 8, citing *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. To demonstrate plain error, an appellant must establish that "'an error occurred, that the error was obvious, and that there is "a reasonable *probability* that the error resulted in prejudice," meaning that the error affected the outcome of the trial.'" (Emphasis added in *Rogers*.) *Bailey* at ¶ 8, quoting *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, quoting *Rogers* at ¶ 22.

{¶54} However, here, not only did Anderson fail to raise this issue in the trial court, he expressly agreed in the decision to not merge the counts for forgery and theft by deception. At sentencing, the court stated, "I did have an opportunity to meet with counsel prior to coming on the record. It's my understanding that the parties agree that Counts 1 and 2 merge, Counts 3 and 4 merge, and the State is electing on Counts 2 and 4. Is all that accurate, [prosecutor]? I hope." The prosecutor then confirmed the statement was accurate, and defense counsel did not indicate any disagreement. To the contrary, when requesting concurrent sentences, defense counsel stated, "[n]ot questioning the merger,

we agree with that. . . ." As defense counsel expressly agreed with the decision to not merge the forgery and theft by deception counts, any error was invited. "'It is the well-settled rule that a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make.'" *Dardinger v. Anthem Blue Cross & Blue Shield*, 2002-Ohio-7113, ¶ 122, quoting *Lester v. Leuck*, 142 Ohio St. 91, 92 (1943); *State ex rel. Johnson v. Ohio Adult Parole Auth.*, 2002-Ohio-2481. Accordingly, Anderson may not now challenge the court's decision with respect to merger.

{¶55} In his appellant's brief, Anderson maintains that, if this court were to hold that defense counsel agreed to the decision as to merger, counsel was ineffective. However, in the State's appellee's brief, it notes that Anderson failed to raise the issue of ineffective assistance of counsel as an assignment of error as required by App.R. 16(A)(3), and the State did not respond to the argument on that basis.

{¶56} As reproduced above, the fifth assigned error does not address ineffective assistance of counsel. Pursuant to App.R. 12(A)(2), this court "may disregard an assignment of error presented for review if the party raising it . . . fails to argue the assignment separately in the brief, as required under App.R. 16(A)." Accordingly, to the extent that Anderson raises an argument with respect to ineffective assistance of counsel, we decline to address it, as this argument was not separately assigned as error and argued pursuant to the appellate rules.

{¶57} Next, Anderson challenges the trial court's restitution order.

{¶58} We review felony sentencing, including restitution orders, under the standard set forth in R.C. 2953.08(G)(2). *State v. Moore*, 2019-Ohio-2512, ¶ 43 (11th Dist.). However, as with merger, Anderson did not preserve his argument on this issue by

raising it in the trial court. Accordingly, he has forfeited this argument except as to plain error. *State v. Carroll*, 2018-Ohio-1884, ¶ 48 (11th Dist.) ("[f]ailure to object to the court's order of restitution . . . constitutes a waiver of all error except plain error") (citation omitted).

{¶59} R.C. 2929.18(A)(1) provides that the court "shall sentence the offender to make restitution pursuant to this section and section 2929.281 of the Revised Code." The amount of restitution is to be based "on the victim's economic loss. . . ." R.C. 2929.18(A)(1). "The victim, victim's representative, victim's attorney, if applicable, the prosecutor or the prosecutor's designee, and the offender may provide information relevant to the determination of the amount of restitution." R.C. 2929.18(A)(1).

{¶60} Here, at sentencing, the State indicated that CheckSmart was requesting $4,500, plus ten percent, amounting to $4,950, in restitution pursuant to the terms of their customer agreement with Anderson. The victim impact statement confirms this amount requested by CheckSmart. Anderson did not challenge this amount or at any time reference restitution at sentencing. The trial court ordered the full amount of restitution requested.

{¶61} On appeal, Anderson maintains that CheckSmart withheld a fee from the check when Anderson cashed it, thus providing him with $4,275. Anderson argues that the initial five percent check-cashing fee ($225) and the additional ten percent contractual fee ($450) are not direct and proximate losses that may be included in restitution.

{¶62} The check cashing agreement between Anderson and CheckSmart that was admitted into evidence at trial provides, "In the event that a check or other negotiable instrument ('Check') that you present to us is return unpaid for any reason, you agree to

pay us the face amount of the Check plus 10% of the amount of the Check or $30.00, whichever is greater, and both the costs of collection and legal expenses as may be permitted by Ohio Rev. Code 2307.61."

{¶63} Regardless of whether the trial court erred in including the check-cashing and contractual fees in restitution, we do not notice plain error except "under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long*, 53 Ohio St.2d 91, at paragraph three of the syllabus. During trial, the CheckSmart employees testified as to their numerous communications with Anderson and his repeated representations that he would pay CheckSmart. The call log admitted into evidence indicates that, at least at one point during these communications, Anderson informed CheckSmart that he would have the amount of $4,950 to pay CheckSmart in full on August 15, 2025. Based on Anderson's agreement to pay CheckSmart in accordance with their contract, this is not the exceptional case where plain error should be noticed to prevent a manifest miscarriage of justice. *See State v. Barnes*, 2002-Ohio-68, ¶ 21 ("Even if a forfeited error satisfies these three prongs [to establish plain error], however, Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court 'may' notice plain forfeited errors; a court is not obliged to correct them.").

{¶64} Accordingly, insofar as Anderson challenges the trial court's failure to merge his convictions and its restitution order, his fifth assigned error lacks merit.

{¶65} The judgment is affirmed.

MATT LYNCH, P.J.,

SCOTT LYNCH, J.,

concur.

Case No. 2025-L-098

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error lack merit. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

_____
JUDGE EUGENE A. LUCCI

_____
PRESIDING JUDGE MATT LYNCH,
concurs

_____
JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-L-098